THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD L. POOLE, Defendant-Appellant.

First District (2nd Division)   No. 84—197

Opinion filed February 23, 1988.

Steven Clark and Bruce Mosbacher, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Theresa M. Gray, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Richard Poole was charged by information with armed robbery and was convicted thereof by a jury. The trial court sentenced him to life in prison as a habitual offender, as provided in section 33B—1 of

the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 33B—1).

Prior to the trial, which took place in November of 1983, defense counsel tendered two questions to the trial court to be asked during *voir dire* regarding Poole's entitlement to a presumption of his innocence. In lieu of putting the proffered questions to the prospective jurors, the trial judge apprised the venire of this right of the defendant in his preamble to the *voir dire*. In addition, he inquired of each potential juror, "As you sit there, can you think of any reason why you couldn't be fair?"

The evidence adduced at trial was as follows. On March 1, 1983, at approximately 10:15 p.m., Carlene Moldenhauer was approaching her apartment at 671 W. Wrightwood, in a well-lighted area in Chicago, and upon hearing someone walking behind her, she turned around and saw a man, whom she subsequently identified as Poole, pointing a gun at her from approximately one foot away.

Poole said, "This is it, give me the money." When Moldenhauer told him that she had none and began screaming, he ordered her to calm down and repeated his demand. Moldenhauer reiterated that she did not have any money, but finally admitted that she had a dollar bill and gave it to him. Poole wanted to enter the building, but Moldenhauer informed him that she had a roommate who was at home. He next demanded her jewelry, but after refusing, she turned and ran up the stairs of the building.

The first set of doors, which led into a well-lighted vestibule, was open and she entered, but the second set was locked. Moldenhauer began ringing all the door bells, and as Poole entered the vestibule, she turned around. When he realized what Moldenhauer was doing, Poole fled. Moldenhauer then used her key to enter the second set of doors, ran upstairs to her landlady's apartment, told her what had happened, and immediately thereafter called the police.

Within about one minute two officers arrived at the apartment. Moldenhauer described Poole to them as a black man of medium complexion, approximately 30 years of age, about 6 feet 1 inch or 6 feet 2 inches, about 160 to 180 pounds, with a full beard and mustache, and who was wearing a navy blue stocking cap, dark pants, and a brownish leather waist-length jacket. She also described the gun Poole had used as a large, silver-threaded screw-type weapon.

Officers Kern and DeJesus were on patrol when they received a radio report that an armed robbery had just occurred at 671 W. Wrightwood; the report also gave Moldenhauer's description of Poole. Moments later, only several blocks from the scene of the crime, the policemen saw a man driving towards them who fit the robber's de-

scription. At that time he was only four feet away from the officers; consequently, they turned on their siren and overhead lights and followed the automobile.

Poole was apprehended after a high speed chase during which Officer Kern saw him bend down as if reaching toward the floor. Kern approached Poole's car, and when he asked him for his license, Poole produced a traffic citation. The officer then required Poole to exit the car and gave him a pat-down search, which revealed nothing. Kern then handcuffed Poole and looked beneath the driver's seat of the car, where he found a loaded .38 caliber gun with a silver-threaded barrel tip. Poole was brought forthwith to the scene of the robbery, where Moldenhauer identified both Poole and the gun.

Motions to quash arrest and suppress evidence and identification were denied. The jury found Poole guilty and he was sentenced to prison for the rest of his natural life in accordance with section 33B—1 (Ill. Rev. Stat. 1983, ch. 38, par. 33B—1).

OPINION

I

■ Poole contends that the trial court erred by refusing to ask in *voir dire* the questions he proposed regarding the presumption of his innocence; instead, the trial court in its preamble to the prospective jurors generally explained to them the applicable law and asked them whether they knew of any reason why they could not be impartial. Poole strenuously argues that the appellate court's opinion in *People v. Zehr* (1982), 110 Ill. App. 3d 458, 442 N.E.2d 581, which was affirmed in 1984 by the Illinois Supreme Court (*People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062), should have been followed by the trial court. The appellate court in *Zehr* had ordered that the cause be remanded on other grounds and instructed the trial court that on retrial it should allow questions in *voir dire* regarding the State's burden of proof, the presumption of innocence in defendant's favor, and his right not to testify in his own behalf, although the court recognized that these directions conflicted with accepted interpretation of Illinois law. *E.g.*, 107 Ill. 2d R. 234; *People v. Lowe* (1975), 30 Ill. App. 3d 49, 54, 331 N.E.2d 639.

Our supreme court in *People v. Britz* (1986), 112 Ill. 2d 314, 493 N.E.2d 575, held that its opinion in *Zehr* would apply prospectively only, since *"Zehr* represented a change in Illinois law." (*Britz,* 112 Ill. 2d at 319.) Accordingly, the trial court in the case at bar was not required to follow the appellate court's ruling in *Zehr* on the conduct of

*voir dire,* because the appellate court's opinion in that case conflicted with the governing law on this subject (see *People v. Bradley* (1981), 97 Ill. App. 3d 1100, 424 N.E.2d 33), in this, the First District. *Bradshaw v. Pellican* (1987), 152 Ill. App. 3d 253, 504 N.E.2d 211.[1]

Assuming *arguendo* that the appellate court's decision in *Zehr* did apply to the case at bar, we conclude that the trial court did not commit error. The People note that the discretion of the trial court concerning the conduct of *voir dire* should not be disturbed absent an abuse of discretion. (*People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 427, 458 N.E.2d 504.) In a recent opinion, we declared that "a trial judge need not turn the process of selecting a jury into a catechetical exercise." (*People v. Williams* (1987), 159 Ill. App. 3d 527, 532, 512 N.E.2d 35.) In the instant case, the trial judge discussed Poole's presumption of innocence in his preamble to the venire and later asked them to signify if they believed they were unable to apply the law fairly in the case before them. This opportunity for the jurors to respond satisfies the requirements of *Zehr* by allowing prospective jurors to indicate whether they feel they can impartially apply the law as explained to them by the trial judge. Accordingly, the trial court did not err in its conduct of the *voir dire.*

## II

■■ This court will not set aside a trial court's disposition of a motion to suppress unless its decision thereon is manifestly erroneous. (*People v. Stewart* (1984), 105 Ill. 2d 22, 41, 473 N.E.2d 840; *People v. Harland* (1982), 111 Ill. App. 3d 984, 987, 444 N.E.2d 635.) Poole contends that the police officers who arrested him did not have probable cause to believe he had committed a crime. Probable cause has been defined by our supreme court as follows: "Probable cause for arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. [Citations.]" (*People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605.) In *Lippert,* one suspect

---

[1]As this court recently noted in *People v. Wilson* (1987), 161 Ill. App. 3d 995, our supreme court in a supervisory order (*People v. Wilson* (1986), 112 Ill. 2d 567 (supervisory order)) implicitly ruled that the appellate court's opinion in *Zehr* was not binding on the trial courts. Although we recognize that supervisory orders have limited precedential value (see *People v. Boykin* (1983), 94 Ill. 2d 138, 146, 445 N.E.2d 1174; *People v. Jackson* (1987), 154 Ill. App. 3d 320, 323-24, 507 N.E.2d 89), the supreme court's supervisory order in *Wilson* appears to support our conclusion that the appellate court decision in *Zehr* was not binding on the trial courts.

was described as about 5 feet 11 inches in height with medium-length blond hair, and another as having bushy brown hair and wearing a blue jacket. (*Lippert,* 89 Ill. 2d at 175.) Although the police officers apprehended the suspects approximately one half hour after the crime and several miles from the scene thereof, the court held that they had probable cause for the reason that the descriptions previously afforded them matched their own detailed observation. (*Lippert,* 89 Ill. 2d at 181.) Thus, *Lippert* is apposite, as is *People v. Mills* (1968), 98 Ill. App. 2d 248, 240 N.E.2d 302, in which the court held that an officer had probable cause to arrest an individual based on his proximity to the scene of the crime and the description of the suspect as "a male Negro about 30 to 40 years old, between 5—9 and 5—11, 145 to 165 pounds, medium complexion and wearing a dark hat and a dark coat." (*Mills,* 98 Ill. App. 2d at 252.) The description given in *Mills* fit the suspect's physical features and attire, as was the case here with Poole. Based on the reasoning of the opinions in *Mills* and *Lippert,* Officer Kern clearly had probable cause to arrest Poole.

Poole cites *In re People v. Woods* (1974), 20 Ill. App. 3d 641, 314 N.E.2d 606, but this case affords him not even tepid help in regard to the issue of probable cause. In *Woods,* the suspect was described as approximately 18 years of age, weighing approximately 150 to 160 pounds, and about 5 feet 8 inches tall. (*Woods,* 20 Ill. App. 3d at 643.) The court held that this general description of the defendant was insufficient, especially since he lived in the neighborhood, thus making valueless the factor of his presence in the vicinity of the crime. (*Woods,* 20 Ill. App. 3d at 646.) In the case *sub judice,* however, Officer Kern had probable cause to arrest Poole, based on an accurate, detailed description of the suspect, his nearness in time and place to the scene of the crime, the fact that Poole did not live in the neighborhood, and his attempted flight. The other cases Poole cites are inapposite because they refer to probable cause in situations wherein the pretext for the search or detention was a traffic stop, a circumstance which does not in any way characterize the instant case. See *Amador-Gonzalez v. United States* (5th Cir. 1968), 391 F.2d 308; *People v. Tate* (1967), 38 Ill. 2d 184, 230 N.E.2d 697.

Moreover, in the case at bar, the suspect fled at high speed the moment the police officers turned on their siren and overhead lights. As the People have noted, this court has held that evidence of flight is a factor to be considered in determining whether a police officer has probable cause to make an arrest. *People v. Bradford* (1979), 71 Ill. App. 3d 731, 736, 389 N.E.2d 636.

■ Having concluded that the arrest was reasonable, we next ex-

amine whether the officers had probable cause to search the automobile. Probable cause in search and seizure cases is based on the totality of the circumstances (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317), determined from the standpoint of the arresting officer, considering his skill and knowledge. (*People v. Stout* (1985), 106 Ill. 2d 77, 86, 477 N.E.2d 498.) The People point out that the very nature of an automobile might justify a warrantless search " 'when there is a compelling need for official action and no time to secure a warrant.' " *People v. Abney* (1980), 81 Ill. 2d 159, 173, 407 N.E.2d 543, quoting *Michigan v. Tyler* (1978), 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942.

■ The officers in the instant case had more than ample cause in making a search of the automobile. First, Officer Kern noticed Poole bending down as if to reach beneath the seat, which the prosecution notes constituted probable cause in *People v. Washington* (1981), 101 Ill. App. 3d 409, 428 N.E.2d 553. Second, the officers were notified that the suspect had committed an armed robbery just minutes before, thus making it probable that he still had the weapon. (See *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405.) Third, Poole fled once the police officers turned on their siren and flashing lights, which gave them further reason to search the automobile. (*Bradford,* 71 Ill. App. 3d at 736.) Accordingly, we hold that the officers had probable cause to arrest Poole and search his car.

### III

■ ■ The People observe that the standard of review of a trial court's denial of a motion to suppress a show-up identification is whether the trial court's decision was manifestly erroneous. (*Stewart,* 105 Ill. 2d 22; *Harland,* 111 Ill. App. 3d 984.) Our supreme court has held that an immediate show-up identification near the scene of the crime is a proper police procedure. (*Lippert,* 89 Ill. 2d at 188; *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Elam* (1972), 50 Ill. 2d 214, 218, 278 N.E.2d 76.) The court in *Manion* held that the decision of whether to permit show-up identifications should be based on an analysis of the following factors:

"[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confronta-

tion." *Manion,* 67 Ill. 2d at 571, quoting *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382.

■■ In *Lippert,* the court upheld the show-up identification even though the descriptions of the suspects were less detailed than in the case at bar, and despite the fact that the showup occurred approximately 55 minutes after the crime. Therefore, the showup in *Lippert* having been found by our supreme court to be admissible, *a fortiori* the showup in the instant case also was admissible, for Moldenhauer had seen Poole in good light for several minutes, thus enabling her to give a highly detailed description of the suspect. And in *People v. McKinley* (1977), 69 Ill. 2d 145, 153, 370 N.E.2d 1040, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1623, the witness saw the defendant for just an instant and the description of the suspect was not completely accurate, yet the court allowed the show-up identification to be admitted into evidence. In the case *sub judice,* Moldenhauer's identification was quite accurate; besides, the showup occurred relatively soon after the crime was committed—approximately 30 minutes later. In addition, the record here indicates that Moldenhauer paid close attention to Poole's physical features, attire, and grooming during the commission of the crime, and she was quite certain of her identification. Therefore, we hold that the show-up identification in the case at bar satisfied every element of the *Manion* test and was properly admitted.

## IV

■■ Poole argues that the prosecution improperly mentioned his prior felony convictions for robbery and armed robbery, although both the prosecutor and the trial judge cautioned the jury not to use this evidence except for the purpose of impeaching Poole's credibility. The People quite accurately respond that it is well-established law in Illinois that the balancing of the probative value of prior convictions as impeachment evidence against its prejudical impact is within the discretionary authority of the trial judge. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 187-88, 449 N.E.2d 822, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145; *People v. Spates* (1979), 77 Ill. 2d 193, 204-05, 395 N.E.2d 563.) The factors to be considered when making this determination are: "the nature of the crime, the nearness or remoteness in time of the conviction to the present trial, the subsequent career of the person, and whether the crime was similar to the one charged." (*Spates,* 77 Ill. 2d at 205; see also *People v. Montgomery* (1971), 47 Ill. 2d 510, 518, 268 N.E.2d 695.) Moreover, the People cite authority for the proposition that the trial court does not have to

*expressly* balance each *Montgomery* factor. *People v. Washington* (1973), 55 Ill. 2d 521, 304 N.E.2d 276.

██ Nevertheless, all of the *Montgomery* factors are satisfied here because (1) the convictions were for felonies, and robbery, like theft, is a crime involving dishonesty (*Spates*, 77 Ill. 2d 193; *People v. Smith* (1982), 105 Ill. App. 3d 84, 91, 433 N.E.2d 1054); (2) the convictions were within the 10-year time period authorized by our courts (*McKibbins*, 96 Ill. 2d at 188; *Montgomery*, 47 Ill. 2d 510); and (3) one of the convictions (armed robbery) is for the same crime as Poole is charged with here, the other conviction being for practically the same crime (robbery), except that the latter is committed by an individual without a weapon, but both of which involve moral turpitude. Accordingly, the trial court did not err in admitting Poole's prior convictions for the limited purpose of impeachment.

## V

██ Poole sets forth several objections to his sentence: (1) that his 1971 rape conviction is not an offense of the type specified in our habitual offender statute (Ill. Rev. Stat. 1983, ch. 38, par. 33B—1); (2) that the statute violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and the separation of powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, §1); and (3) that the 1980 amendment to the statute was not enacted in conformity with the requirements of the Illinois Constitution and is therefore void. The People contend that these issues were waived because Poole failed to raise them at trial.

Poole's only argument during his sentencing hearing was that section 33B—1 (Ill. Rev. Stat. 1983, ch. 38, par. 33B—1) was unconstitutional, but he did not attempt in any way to give reasons to support this assertion. The People maintain that Poole waived any objection to his sentence because he failed to raise the issue before the trial court. (*People v. Hartfield* (1985), 137 Ill. App. 3d 679, 684, 484 N.E.2d 1136; *People v. Visnack* (1985), 135 Ill. App. 3d 113, 481 N.E.2d 744.) Furthermore, our supreme court has held that the mere mention that a statute is unconstitutional is insufficient to preserve the issue for review. (*People v. Caballero* (1984), 102 Ill. 2d 23, 41, 464 N.E.2d 223.) Contrary to Poole's assertion, the constitutionality of a statute utilized by a trial court is not a jurisdictional question (*People v. Jameson* (1987), 155 Ill. App. 3d 650 (court-ordered psychiatric exams), and is therefore subject to waiver. *United States v. Young* (1985), 470 U.S. 1, 84 L. Ed. 2d 1, 105 S. Ct. 1038; *People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535; *People v. Pettigrew* (1984), 123 Ill. App. 3d 649,

462 N.E.2d 1273.

Nevertheless, reviewing courts have the authority in certain instances, under the plain error rule, to address issues which otherwise would be waived. Our supreme court rules provide that a reviewing court may, in its discretion, consider "[p]lain errors or defects affecting substantial rights." (107 Ill. 2d R. 615(a); see also *People v. Morissette* (1986), 150 Ill. App. 3d 431, 501 N.E.2d 781 (court ruled plain error on one right and waiver on the other because the latter did not involve a substantial right).) In some cases this court has deemed waived constitutional attacks on the habitual offender statute (*People v. Cannady* (1987), 159 Ill. App. 3d 1086, 513 N.E.2d 118; *Pettigrew*, 123 Ill. App. 3d at 650), while in others it has reached the opposite conclusion (*Morissette*, 150 Ill. App. 3d at 442; *People v. Hartfield* (1985), 137 Ill. App. 3d 679, 690, 484 N.E.2d 1136). We agree with the result reached in both *Morissette* and *Hartfield* that it is the right of every defendant to be sentenced under a constitutional statute, and that such right is a substantial one, for it goes without saying that imprisonment involves one's liberty; and if a convicted defendant may not be sentenced under an unconstitutional statute, it stands to reason that neither may a sentence be enhanced or augmented by an unconstitutional law. Accordingly, we will review Poole's objections as to the constitutionality of the habitual offender statute under the plain error rule.

However, we are constrained to hold that the same sensible rationale has no application to the issue Poole raises as to whether the trial judge properly considered his 1971 rape conviction when imposing a life sentence upon him. Therefore, we must hold such issue to have been waived since our courts have held that such alleged errors do not constitute plain errors because they consist solely of a question of proof concerning defendants' sentences. (*People v. Harden* (1986), 113 Ill. 2d 14, 18-19, 495 N.E.2d 490 (error in presentence report waived); *People v. Godinez* (1982), 91 Ill. 2d 47, 56-57, 434 N.E.2d 1121 (waived inclusion of allegedly inadmissible material in presentence report); *People v. Burdine* (1978), 57 Ill. App. 3d 677, 688, 373 N.E.2d 694 (waived inaccuracies in presentence report which the State reiterated in the sentencing hearing).) Moreover, in a case precisely on point, this court held that the defendant had waived the issue that "the trial court erred by accepting as evidence of his prior convictions the recitation of his offenses contained in the presentence report instead of requiring certified copies of his prior convictions to be introduced by the State." *People v. Jaffe* (1986), 145 Ill. App. 3d 840, 859, 493 N.E.2d 600.

Our case can be distinguished from *People v. Walsh* (1981), 101 Ill. App. 3d 1146, 428 N.E.2d 937, wherein the sentence was patently contrary to law because the trial court imposed an extended-term sentence for an offense that was not the most severe crime for which the defendant was convicted, in violation of the law as stated in *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520. In the instant case Poole's objection is that his prior conviction was not demonstrated with sufficient competent evidence. This alleged error is not plain error; thus, it has been waived by Poole.

■■ Our courts have previously rejected the constitutional challenges to the habitual offender statute which Poole raises in the instant case. At the outset, it is a fundamental principle of law that there is a strong presumption that a statute is constitutional. (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 497 N.E.2d 763; *People v. Taylor* (1984), 102 Ill. 2d 201, 206, 469 N.E.2d 1059; *People v. McNeil* (1984), 125 Ill. App. 3d 876, 880, 466 N.E.2d 1058.) Our supreme court has already held that the habitual offender statute does not violate the separation of powers provisions of the Illinois Constitution. (*Taylor,* 102 Ill. 2d at 207-09.) In addition, on many occasions this court has upheld the statute in the face of constitutional objections based on due process and equal protection grounds. (*Morissette,* 150 Ill. App. 3d at 442-44; *Hartfield,* 137 Ill. App. 3d at 690-91; *People v. Coleman* (1984), 128 Ill. App. 3d 538, 547, 470 N.E.2d 1277; *People v. McNeil* (1984), 125 Ill. App. 3d 876, 881-82, 466 N.E.2d 1058; *People v. Tobias* (1984), 125 Ill. App. 3d 234, 240-41, 465 N.E.2d 608; *Pettigrew,* 123 Ill. App. 3d at 651-52; *People v. Withers* (1983), 115 Ill. App. 3d 1077, 1088, 450 N.E.2d 1323, *cert. denied* (1984), 465 U.S. 1052, 79 L. Ed. 2d 726, 104 S. Ct. 1332.) Finally, in a case in which this court held that the defendant had waived the question of whether the 1980 amendment to the statute was validly enacted, the court decided that in any event the revision was passed in accordance with article IV of the Illinois Constitution. *Cannady,* 159 Ill. App. 3d at 1089-90.

In light of the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

STAMOS and BILANDIC, JJ., concur.