THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD FOLLINS, Defendant-Appellant.

First District (1st Division) No. 1—87—2443

Opinion filed March 30, 1990.

Michael J. Pelletier and Janice Lynn Triptow, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, and William B. Schiller, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Edward Follins (defendant) appeals his conviction by a jury of robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—1) and four-year sentence to the Illinois Department of Corrections. He contends that (1) he was denied his sixth amendment right to effective assistance of counsel; (2) he was denied due process by the trial court's failure to hold an evidentiary hearing on his post-trial motion allegations of ineffective assistance of counsel; (3) the trial court erred in denying his motion to quash his arrest and suppress its fruits; and (4) the trial court erred in refusing to tender certain jury instructions. We affirm.

In the afternoon of April 25, 1986, as Steven Hawkins, an Indiana resident, was walking in the vicinity of Clark and Wellington Streets in Chicago, two individuals approached him and absconded with his wallet and $80. Defendant was arrested shortly thereafter and charged with robbery in connection with the incident.

Prior to his trial, defendant filed a motion to quash his arrest on the ground that the arresting officer lacked probable cause to arrest him. The trial court denied the motion after hearing the following evidence.

The victim testified that on April 25, 1986, he was walking along a side street in Chicago when two individuals approached him from behind and demanded his wallet. He refused, and a struggle ensued between the victim and one of the individuals, resulting in the victim lying on the ground bleeding and the offenders absconding with the victim's wallet and $80. The incident occurred within two minutes, and the police arrived two minutes thereafter. Upon the officers' arrival, the victim stated that his wallet and $80 had been taken and described the offenders. Both were in their mid-20s. The offender who struggled with the victim was wearing a blue jogging suit with white piping. Although the victim was uncertain as to the offender's height, he estimated that the offender approximated the officer's height and was "a little heavier." The second individual was short and wore a white-type T-shirt, jogging pants, and had a band-aid on his knee. Following this 30-second conversation, the victim pointed in the direction

that each offender ran and the officers departed. The officers returned five minutes later with an individual.

Officer Angelo Falbo of the Chicago police department testified that on April 25, 1986, he and his partner responded to a radio broadcast and within 30 seconds reached the intersection of Wellington and Clark Streets. There, they observed the victim bleeding from the mouth and with blood all over his shirt. The victim stated that his wallet and an unspecified amount of money were taken. Based upon the victim's description of the offenders, Falbo made the following radio broadcast:

> "Wanted for robbery which occurred at the area of Wellington and Clark, two male blacks, number one, 5 feet 9 inches, in his mid-20's, about 170 pounds, wearing a blue jogging suit. Number two was a male black approximately 5 feet 9 inches, 170 pounds, wearing a white shirt, white pants with a white Ace bandage around his knee. One subject proceeded westbound on Wellington, and one subject proceeded northbound on Clark."

Approximately five minutes later, Falbo heard through a radio broadcast that Officer James Farah had the "subjects [sic] stopped" who matched the description of the "wanted offenders [sic]." Falbo and his partner proceeded to 2900 Sheffield Avenue, and Falbo thereafter accompanied defendant back to the scene of the incident.

Farah testified that he was monitoring a traffic light at Sheffield and Wellington Streets when he heard a radio broadcast of a strong-armed robbery committed by two black male offenders, described as 5 feet 9 inches in height and weighing 170 pounds, one individual having a bandage on his knee and wearing a white shirt and white pants and the other individual wearing a blue sweat suit. As Farah proceeded southbound on Sheffield, he observed an individual wearing a blue jogging suit, whom he estimated to be 5 feet 9 inches in height and weighing 170 pounds and who was later identified as defendant.

Farah believed defendant "would be a good subject to be interviewed and arrested on this charge." He approached defendant and inquired into his destination. Defendant responded that he was looking for Wrigley Field. Farah then "patted down" defendant's outer garments but did not recover anything. Defendant was not "free to leave."

Farah subsequently radioed for assistance, handcuffed defendant, and placed him under arrest. He also read him his *Miranda* rights and assisted him into the squad car. Two minutes afterwards, Falbo arrived and the officers transported defendant to the scene of the incident, where he was identified by the victim.

On the day of trial, the trial court denied defendant's *pro se* motion for substitution of counsel, wherein he claimed that his appointed public defender did not adequately confer with him and failed to introduce favorable evidence at his motion to quash hearing. The following evidence was then introduced at defendant's trial.

The victim testified that while he was walking down a side street parallel to Clark Street in Chicago, he felt an individual place his hand on his back pocket. When the victim turned around, he stood face-to-face with, and four or five inches from, an individual whom he identified in court as defendant, while another individual simultaneously had his hand on his back pocket. Defendant demanded his wallet, threatening to kill him. The victim refused, and defendant struck him in the mouth. The victim grabbed defendant's blue jogging shirt, and the two fell to the ground, causing the victim's wallet and money, consisting of approximately $70 or $80, to scatter on the ground. At this time, the victim observed the second individual, who was wearing a white T-shirt, white running pants and had an ace bandage on his knee. Defendant and the second individual grabbed the victim's money and wallet and ran. The victim chased them to Clark Street, where the two offenders "split off" in different directions.

Two minutes later, the victim gave a description of the offenders to two plainclothes police officers who had arrived at Clark Street. The victim's testimony as to the description was similar to his testimony at the pretrial hearing. In addition to describing the offenders, the victim pointed in the direction the offenders fled. One of the officers stopped an individual across the street from the victim, who was wearing shorts, a white shirt and a reflector jacket, but the victim told them that the individual was not the offender. The officer later returned with defendant, and the victim identified defendant, while defendant stood alongside the squad car, as the person who struck him in the mouth and took his money.

On cross-examination, the victim admitted he was upset, angry and hurt at the time. He further admitted that he did not mention at defendant's preliminary hearing that the offenders absconded with his money, but stated that he testified only that his "pocket tore and [his] wallet fell out. Apparently it was gone. I never seen [sic] it again." He also admitted that he testified that he told the officers on the scene that he was not certain of the offender's height.

Falbo testified that, during his conversation with the victim, the victim stated that the offender had no facial hair. He further testified that after his 30-second conversation with the victim at the scene, he proceeded west on Wellington Street in his squad car, at which time

he made a radio broadcast of the offenders' descriptions, that testimony being consistent with his testimony at the pretrial hearing, except that he made no mention of the offenders' ages.

As Falbo proceeded west on Wellington Street, he heard a police radio broadcast that an officer in a "beat" car four blocks away planned to stop an individual who matched the earlier broadcast description. When Falbo reached the location, he observed Officer Farah with defendant, who was handcuffed in the back seat of Farah's squad car. Falbo and Farah proceeded to the victim's location, where the victim identified defendant as the offender while defendant stood handcuffed outside a squad car approximately 1½ feet from the victim. Falbo conducted a search of defendant at the 19th District police station and inventoried a wallet containing defendant's identification and $43.

Farah testified that he radioed for assistance when he observed defendant—who matched the broadcast description of an individual approximately 5 feet 9 inches in height, weighing 170 pounds, and wearing a blue jogging suit—walking in an opposite direction from where the robbery occurred. Upon Farah's inquiries, defendant stated that he was going to Wrigley Field, which was located in the opposite direction defendant was walking and approximately one mile north. Farah then placed defendant under arrest, handcuffed him, conducted a "pat down" search and read defendant his *Miranda* rights. When they arrived at the victim's location, Farah escorted defendant from the squad car while he was still handcuffed. Farah observed the victim point at defendant and nod his head.

Defendant testified that after waiting for baseballs, drinking beers, and listening to music outside Cubs park until 2:30 p.m., he left to return home. As he walked down Sheffield Avenue, police drove up, asked him where he was coming from and for his identification, and told him to "get in." Defendant obliged, and they proceeded to the intersection of Clark and Wellington Streets, where he first observed the victim.

Defendant further testified that at the time of trial he was 33 years old and that on April 25, he was almost six feet tall, weighed 180 pounds, and was wearing a blue jogging suit with white striping and some light blue jogging pants. He also identified a photograph of himself taken on April 26, 1986, at Cook County jail, depicting a small mustache.

Following defendant's conviction of robbery but before his sentencing, defendant filed a *pro se* motion for a new trial and substitution of counsel on the grounds that he was not permitted to testify

accurately or introduce his clothes as evidence. Without ruling on defendant's motion, the court, on March 5, 1987, allowed defendant's trial counsel leave to withdraw and permitted the substitution of counsel. On July 5, 1987, defendant's new counsel filed an amended motion for a new trial, and the trial court denied the motion following oral arguments.

■ On appeal, defendant first contends that he was denied his sixth amendment right to effective assistance of counsel by his counsel's failure to file a motion to suppress the out-of-court showup identification. Under the standard set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, as adopted in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, a defendant must satisfy two requirements to establish a denial of his sixth amendment right to effective legal representation: (1) that his counsel's performance fell well below the objective standard of reasonableness and (2) that, but for his counsel's errors, the result of the proceeding would have been different.

■ Illinois case law illustrates that whether defense counsel's failure to make a motion to suppress will be deemed ineffective legal representation depends on the circumstances of each case. (*People v. Fernandez* (1987), 162 Ill. App. 3d 981, 516 N.E.2d 366; *People v. Calderon* (1981), 101 Ill. App. 3d 469, 428 N.E.2d 571.) Courts have refused to find ineffective assistance of counsel where the decision not to file a motion may be viewed as a tactical decision (*e.g., People v. Taylor* (1982), 110 Ill. App. 3d 112, 116, 441 N.E.2d 1231, 1233; *People v. Goins* (1981), 103 Ill. App. 3d 596, 600, 431 N.E.2d 1069, 1072) or where defendant fails to show a reasonable probability that the outcome would have been different had the motion been filed (*e.g., People v. Winchel* (1987), 159 Ill. App. 3d 892, 913, 512 N.E.2d 1298, 1314; *People v. Byrd* (1986), 139 Ill. App. 3d 859, 864, 487 N.E.2d 1275, 1279).

Defendant asserts that counsel's decision not to file the motion cannot be viewed as a tactical decision or as not affecting the trial's outcome because the record demonstrates the likelihood of the successful suppression of the only evidence clearly implicating the defendant as the perpetrator of the crime charged. In response, the State argues that defense counsel's decision not to file the motion to suppress was not error because the showup identification was entirely proper.

■ An out-of-court identification will be suppressed only where both the identification is unnecessarily suggestive and such suggestiveness gives rise to a substantial likelihood of misidentification. (*Neil*

*v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.) A subsequent in-court identification will be suppressed where the suggestiveness gives rise to a substantial likelihood of "irreparable" misidentification. *Neil*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.

■ The suggestiveness requirement involves an inquiry into both the suggestiveness of the identification and the necessity of the suggestive identification. (*Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.) Courts have recognized the suggestiveness of one-on-one showups and widely condemn them. (*Stovall*, 388 U.S. at 302, 18 L. Ed. 2d at 1206, 87 S. Ct. at 1972; *People v. Gardner* (1966), 35 Ill. 2d 564, 572, 221 N.E.2d 232, 236.) Courts, however, have found suggestive identifications not to be *unnecessarily* suggestive in certain circumstances. The *Stovall* Court found an immediate, one-on-one hospital confrontation not to be unnecessarily suggestive where it was uncertain how long the victim might live, the victim could not visit the jail, and where the victim was the only person who could have exonerated the suspect. (*Stovall*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.) In *Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967, the Court found that resort to a photographic array was justified where a serious felony had been committed, where the perpetrators were at large, and where it was essential to determine whether the law enforcement personnel were "on the right track" so that they could deploy their police forces.

Our supreme court has indicated a willingness to justify showup identification procedures in "fleeing-offender" situations in order to facilitate the immediate release of an innocent suspect, as well as to enable the police to resume their search for the fleeing offender. In *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, the court rejected the defense contention that an unnecessarily suggestive identification resulted where a witness viewed a suspect handcuffed in a squad car shortly after a robbery. It found the identification was justified on the bases of both the witness' opportunity to view the robber and the facilitation of the police search. *Manion*, 67 Ill. 2d at 570, 367 N.E.2d at 1316; see also *People v. McKinley* (1977), 69 Ill. 2d 145, 370 N.E.2d 1040; *People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68.

■ Defendant insists here that the court's "probable cause" ruling diminishes the element of the need to facilitate the search. We do not believe the fact that the officers may have had probable cause to arrest the offender diminishes the element of the need to facilitate the search, as the probable cause determination rested upon a broadcast description of the offender and the showup would enable police to

correct any error in judgment and immediately resume the search for the fleeing offender.

Defendant further asserts that the victim gave only a very general description of the offenders and did not have a clear opportunity to observe the offender during the two-minute occurrence in which the victim was injured. Contrary to defendant's assertions, the record discloses that the witness had a clear opportunity to view the offender. The victim, in close proximity to the offender, in the daylight hours, had a face-to-face confrontation with the offender, during which time the offender spoke with and struggled with the victim. The victim's description of the offender also included a fairly detailed description of his apparel. Thus, under the circumstances present here, where the police were in pursuit of the offender within minutes of the robbery and where the victim had a clear opportunity to view the offender, we hold that the showup was not unnecessarily suggestive.

Moreover, assuming the lineup was unnecessarily suggestive for purposes of applying the second part of the constitutional analysis, the record supports a finding that any suggestiveness in the lineup did not affect the reliability of the out-of-court identification by giving rise to a "substantial likelihood of misidentification." In determining the reliability of the identification under this standard, courts must consider the totality of the circumstances and are guided by the following factors: the opportunity of the witness to view the criminal act, the witness' degree of attention, the accuracy of the prior description of the offender, the level of certainty demonstrated by the witness at the confrontation, and the time between the crime and the confrontation. *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.

Applying these factors to the circumstances here, defendant points out that the victim was injured and upset at the time of the identification, that he gave no distinguishing features in his description to police, and that he was uncertain of the offender's height. As previously stated, the victim had an opportunity to view the offender in the daylight hours while he was face-to-face with, and in close proximity to, the offender. The victim also gave a fairly accurate description of the offender's height, weight, and particulars of his clothing, including the detail of a "white piping" on the offender's blue jogging suit. Additionally, the victim evidenced a high level of certainty in identifying defendant, as indicated by his hasty rejection of another suspect as being the offender and prompt identification of defendant. Finally, the identification occurred within minutes fol-

lowing the robbery. Based upon the totality of the circumstances, we believe the trial court would have found that any suggestiveness in the identification did not give rise to a substantial likelihood of misidentification.

Because the record demonstrates the futility of a motion to suppress the identification evidence here, defendant has failed in his burden of establishing that counsel's performance fell well below the objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different.

Defendant next contends that he was denied due process when the trial court failed to conduct an evidentiary hearing on his posttrial motion allegations raising matters of ineffective assistance of counsel that went beyond the record. In denying substituted counsel's amended motion for a new trial alleging defendant's former counsel's failure to introduce certain evidence, the trial court stated that a posttrial motion was not the appropriate vehicle, in the absence of affidavits or other evidence, to reach defendant's claims as to matters outside the record.

■■ Illinois case law recognizes that a defendant may base his motion for a new trial on matters outside the record. (See *People v. Morrison* (1985), 137 Ill. App. 3d 171, 484 N.E.2d 329; *People v. Jackson* (1981), 100 Ill. App. 3d 318, 426 N.E.2d 1132; *People v. Gamboa* (1975), 30 Ill. App. 3d 242, 332 N.E.2d 543; *People v. Dzielski* (1970), 130 Ill. App. 2d 581, 264 N.E.2d 426.) A trial court, however, is not required to hold an evidentiary hearing as to such matters where the allegations are insufficient to establish a basis for a new trial. (*Jackson*, 100 Ill. App. 3d at 325, 426 N.E.2d at 1138; *Morrison*, 137 Ill. App. 3d at 182, 484 N.E.2d at 338.) A trial court's decision to deny an ineffective assistance claim without a hearing has also been upheld on the ground that the defendant failed to attach to his motion a sworn affidavit as to matters outside the record. *People v. Miles* (1988), 176 Ill. App. 3d 758, 773, 531 N.E.2d 891, 899; *People v. Brandon* (1987), 157 Ill. App. 3d 835, 845, 510 N.E.2d 1005, 1010.

■■ The State argues here that the trial court properly denied defendant's motion for a new trial without an evidentiary hearing because it involved allegations outside the record which were not supported by affidavits. Defendant urges that he sufficiently complied with the affidavit requirement by his and his counsel's notarized signatures on his new trial motion. We need not determine whether defendant was required to file a sworn affidavit here or whether the notarized signatures sufficiently complied with the affidavit requirement because defendant's allegations are insufficient to establish a ba-

sis for a new trial under the standard for evaluating counsel's effectiveness set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

Defendant's amended motion raised the following matters outside the record which related to his ineffective assistance claim: counsel's failure to subpoena "911 dispatch tapes" from the Chicago police department; counsel's failure to introduce defendant's jogging suit; counsel's failure to allow defendant to testify that the officers had stopped him prior to his arrest but released him when a radio dispatch gave a description differing from defendant's characteristics; and counsel's failure to introduce defendant's testimony as to his height and facial appearance at the hearing on defendant's motion to quash his arrest. This evidence, defendant asserts, would have affected the outcome of the probable cause determination, resulting in the suppression of the identification evidence as its fruits, as well as the outcome of the trial by providing a reasonable doubt as to defendant's guilt.

A review of defendant's allegations leads us to conclude that the evidence would not have affected the trial's outcome and that counsel's performance with regard to the allegations was not unreasonable. Defendant's suggestion that the "911 dispatch tapes" would have conflicted with the officers' testimony as to the radio broadcast description is mere speculation. Defendant fails to indicate how he would benefit from the introduction of his jogging suit where a picture of defendant wearing the jogging suit at his arrest was adduced at trial. The discrepancies in the victim's description of the offender and defendant's facial characteristics were not that significant to affect the outcome of the probable cause determination, and counsel's decision not to have defendant testify at the motion to suppress hearing may be viewed as a tactical decision. Finally, counsel's decision not to have defendant testify as to his allegations that he had previously been stopped and released by the arresting officer and that he heard a radio dispatch giving a description differing from his characteristics may be viewed as a strategic decision in view of the incredibility of the allegations. Not only are defendant's assertions in this regard contrary to the testimony of three other State witnesses, the assertions are also illogical in that the officers would release defendant because he did not match the broadcast description but then for some reason return and arrest him.

Defendant next contends that the trial court erred in finding the officers had probable cause to arrest him and denying his motion to quash the arrest and suppress its fruits. The State initially argues

that defendant has waived this issue by failing to allege the error with specificity in his post-trial motion. Although defendant failed to allege the issue with the required specificity in his post-trial motion, the constitutional exception to the waiver rule applies here. See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

 ██ Turning to the merits of defendant's claim, to meet its burden of establishing probable cause, the State must show that the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable causation into believing that an offense has been committed and that the arrestee has committed the offense. (*People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.) The probable cause determination is a commonsense, practical question to be determined by the totality of the circumstances (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317), and the trial court's finding of probable cause will not be disturbed on review unless manifestly erroneous (*People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869; *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280).

Defendant, directing our attention to *In re Woods* (1974), 20 Ill. App. 3d 641, 314 N.E.2d 606, argues that the trial court erred in its probable cause determination because the arrest was based solely upon the fact that defendant, who matched a very general description of the offender, was in the vicinity of the crime shortly after the crime occurred. In *Woods*, the court stated that a general description is insufficient to provide probable cause unless it is supported by other relative facts and circumstances known to the arresting officer. (*Woods*, 20 Ill. App. 3d at 646, 314 N.E.2d at 609.) The victim, in *Woods*, related to the arresting officer her assailant's height, age, weight and the fact that he wore a long, dark red maxi-coat. The court found the maxi-coat to be of little value in view of the officer's testimony that the coat was not an unusual piece of apparel for a black youth in that area. The only other supporting testimony mentioned by the court was the fact that the defendant was in the vicinity of the crime, which it found to be negated by the fact that he was stopped as he was entering his home.

 Unlike *Woods*, there is no indication here that blue jogging suits are commonly worn in the area. In any event, the description was supported by other facts and circumstances. The arresting officer knew a robbery had been committed a few minutes earlier and within blocks of where he observed defendant. Defendant matched the broadcast description of the offender and was walking in the opposite direction of the crime vicinity. When questioned by the officer, defendant

stated his destination was Wrigley Field, even though he was walking in the opposite direction. Under these facts and circumstances, the trial court's probable cause finding is not manifestly erroneous.

A separate ground also exists for upholding the trial court's ruling. In *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605, our supreme court examined the Federal cases in the fourth amendment area and concluded that under certain circumstances, other than "a full-blown arrest," a seizure is justified even though the officers are acting on somewhat less than probable cause. After analyzing the United States Supreme Court holdings in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248, and *Michigan v. Summers* (1981), 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587, the court concluded that, even absent probable cause, the transportation of a suspect for purposes of a showup when the officer is conducting a field investigation immediately after the commission of a crime and when the victim, a short distance away, could confirm or deny the identification of the suspect may not be an unreasonable seizure under the fourth amendment. It reasoned that "a short period of detention was only minimally intrusive when compared to the benefit of immediate investigation." (*Lippert*, 89 Ill. 2d at 183, 432 N.E.2d at 610; see also *People v. Garza* (1984), 125 Ill. App. 3d 182, 465 N.E.2d 595; *People v. Kincy* (1982), 106 Ill. App. 3d 250, 435 N.E.2d 831.) Under the circumstances presented here, we believe that transporting defendant a few blocks to the scene of the crime for a showup was minimally intrusive when compared to the benefit of the immediate investigation.

■ Finally, defendant contends that the trial court committed reversible error in refusing to tender his three non-Illinois Pattern Jury Instructions on the issue of identification. Defendant failed to raise this issue in his post-trial motion. Because we find none of the exceptions set forth in *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, to be applicable here, we hold that defendant has waived our review of this issue.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.