THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEROME RUDOLPH, Defendant-Appellant.

(No. 56428;

First District (5th Division)—June 8, 1973.

James J. Doherty, Public Defender, of Chicago, (Suzanne M. Kohut, Assistant Public Defender, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane and Robert C. Samko, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant was found guilty after a jury trial of the crimes of murder of Francisco Servidio and armed robbery of Caroline Ballinger. After a hearing in aggravation and mitigation, he was sentenced to twenty to thirty-five years for murder and fifteen to twenty-five years for armed robbery, the sentences to run concurrently.

Defendant raises the following issues on appeal: whether the admission into evidence of the testimony of Charles and Mildred Bastin, concerning an illegally seized radio, and of defendant's statement to police violated defendant's fourth and fourteenth amendment rights; whether defendant was proven guilty of the offenses of murder and armed robbery beyond a reasonable doubt; whether the court's failure to instruct the jury on "mere presence" at the scene of a crime denied defendant a fair trial; and whether the sentence imposed by the trial court is excessive.

*EVIDENCE*

Defendant and Kenneth Helm were both indicted for the murder of Francisco Servidio and the armed robbery of Francisco Servidio and Caroline Ballinger. Prior to trial defendant moved to suppress a statement which defendant had given to the police, on the grounds that he

was not informed of his constitutional rights. The motion was denied. Defendant then moved to sever his cause from that of his co-defendant, which was granted.

Defendant also moved to suppress the use of a radio seized by the police in the apartment of Charles and Mildred Bastin, defendant's brother-in-law and sister. At the hearing, it was established that the police went to the Bastin apartment on the belief that defendant might be residing there. Mr. and Mrs. Bastin answered the door and the officers identified themselves and asked if defendant was inside. Mrs. Bastin testified that the police knew that defendant was her brother. Mr. Bastin told police that he did not know where defendant could be found. The officers asked permission to enter, and before any reply was given, they walked into the apartment. Officer Sandburg confiscated a radio from the top of a bookcase. Since no express invitation was given the police, the trial court granted the defendant's motion to suppress the radio as a product of an illegal search. Defendant then moved to suppress testimony of Charles and Mildred Bastin involving the radio and a statement by defendant to police on the theory that both were the fruits of the illegal search and seizure. The court denied the motion.

The trial began on June 1, 1971 with Mrs. Caroline Ballinger testifying for the State that she, her husband, and the deceased, Francisco Servidio, resided in a first floor apartment at 2513 West Harrison Street in Chicago. At approximately 4:00 A.M. on the morning of May 29, 1970, Mrs. Ballinger was awakened by the ringing of the front doorbell. Looking through the window in the front door, she saw a male whom she did not recognize, who asked to see the deceased and asked to come inside because someone was trying to kill him. After refusing to allow the stranger to come inside, Mrs. Ballinger returned to bed. The witness testified that approximately fifteen minutes later she was awakened by a crash at the back door. While attempting to leave the apartment and seek help, the man she had seen earlier at the front door grabbed her, put a knife to her throat, and pulled her back into the apartment. Another man, not as tall as the one who grabbed her, was also inside the apartment. The two men demanded money and she gave them some. While left alone, she escaped through the back door. She stopped a police car and upon returning to her apartment with the police, she discovered the deceased bleeding profusely from an apparent stab wound, and that $150 belonging to the deceased, $35 of her own money, the deceased's wristwatch, and her radio were all missing.

Charles Bastin testified for the State that on May 29, 1970 at approximately 6:00 A.M., defendant, carrying a radio, and Kenneth Helm, co-

defendant, entered the Bastin home. Appearing "high" and "shaky," the two men counted on the kitchen table approximately one hundred dollars, dividing the sum between them.

Police Officer Thomas Sherry testified that on June 3, 1970 defendant voluntarily surrendered himself to the police after a warrant for his arrest was issued. After defendant was placed under arrest, informed of the charges against him, and advised of his constitutional rights, defendant made a statement in the presence of Sherry and another police officer. Defendant stated that at 6:00 A.M. on May 29, 1970 he left the Bastin apartment to go to the Maxwell Street business area to buy some things for his children. He met an acquaintance, one Kenneth Helm. The two men proceeded to the home of the deceased, Francisco Servidio, where Helm said he was going to make some money. Helm went around to the rear of the apartment while the defendant remained outside. When Helm did not reappear after some period of time, defendant entered the first floor apartment from the rear of the building. He saw Helm, butcher knife in hand, standing over the deceased who was lying on the floor bleeding. He told Helm that he wanted no part of the crime, left the apartment, and proceeded down an alley. After Helm later rejoined him, defendant bought a radio from Helm for seven dollars. He also told the police that he knew that the *radio* was a part of the proceeds of a robbery, that he wasn't sure, in advance, that Helm entered the building to rob someone, and that Helm had a habit of robbing people in the area.

At the end of the State's case-in-chief the defendant moved for a directed verdict. The court granted the motion in regard to the armed robbery of Francisco Servidio, denying it as to the other counts.

Defendant testifying in his own behalf related much the same account of the morning of May 29, 1970 as did Officer Sherry. Defendant claimed that he met Helm between 7:30 and 8:00 A.M., that he had no knowledge of the robbery, that he walked inside the apartment and saw Helm standing over the deceased with a knife in hand, and that defendant received $80 for a painting job. Defendant was convicted of murder and armed robbery and took this appeal.

*OPINION*

■■ Defendant contends that the testimony of Charles and Mildred Bastin should have been suppressed by the trial court as being the product of an unlawful search and seizure. Defendant's first theory of exclusion is that since the identity of the two witnesses was discovered by reason of an unlawful search and seizure of the apartment, their entire testimony should have been suppressed. Defendant cites two cases in support of this contention. (*People v. Albea* (1954), 2 Ill.2d 317, 118 N.E.2d 277 and *People v. Martin* (1942), 382 Ill. 192, 46 N.E.2d 997.)

The two cases are distinguishable because the identity of the witnesses in both cases was discovered as a result of illegal searches. In the case at bar, Mrs. Bastin testified that the police knew that defendant was her brother. The police officers believing that defendant could be found at the Bastin home went there, where they were confronted by Mr. and Mrs. Bastin at the door. Clearly, the officers knew that the Bastins were potential witnesses before the illegal search of the premises ever occurred and the two witnesses were properly allowed to testify.

■■■ Defendant's second theory is that neither Mr. Bastin nor Mrs. Bastin would have testified *but for* their being confronted with the illegally seized radio. The court in *United States v. Evans* (8th cir. 1972), 454 F.2d 813, reached the same issue and upheld the trial court's admission of the testimony into evidence. In *Evans,* the police illegally searched a Mr. Chandler's car and upon discovering burglary tools confronted Chandler with the tools and demanded an explanation. Chandler then implicated defendants in a burglary. In upholding the conviction, the court held that even though a "but for" relationship between the illegal seizure of the evidence and the statement by Chandler may have existed, the relationship was too attenuated to require reversal. In reaching this conclusion, the court relied upon *Wong Sun v. United States* (1963), 371 U.S. 471, 487-88:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"

In the case at bar, the name and identity of the Bastins were properly acquired by the police and not by use of any illegal means. There is no contention that the officers acted in bad faith in the search or in the interrogation. Also, the Bastins apparently voluntarily cooperated with the police in giving a statement at their apartment and with the State in testifying at trial. We find that the relationship between the illegal seizure of the radio and the statements by the Bastins to be too attenuated to require suppression of the statements.

■■ Defendant next contends that his own statement to police after his arrest should have been suppressed. Defendant's first theory of exclusion is that his statement was induced by the police officers' confronting him with the illegally seized radio. We reject this argument since we find nothing in the record to indicate that defendant was, in fact, confronted with the radio.

Defendant's second theory of exclusion is that were it not for the unlawful seizure of the radio, no probable cause to arrest defendant existed; were it not for the probable cause for arrest, no arrest warrant could issue; were it not for the existence of the arrest warrant, defendant would not have been threatened with arrest; and were it not for being threatened with arrest, defendant would never have surrendered himself and made the statement. Without deciding whether this chain of events theory is legally valid, we find that even without the unlawful seizure of the radio, probable cause for arrest existed. Mr. Bastin's statement to police (already held to be admissible (see infra)) concerning the radio and linking defendant to Helm, was itself a sufficient basis for probable cause. Therefore, we hold that defendant's statement to police was properly admitted into evidence.

■■ Defendant next contends that the State did not prove him guilty of murder and armed robbery by the required standard of proof. We find that on the basis of evidence presented to the jury, the defendant was proven guilty beyond a reasonable doubt. Caroline Ballinger, one of the victims, testified that when she first attempted to escape from Helm, she noticed another strange man in her apartment. This other man and Helm both demanded money. Defendant admitted being at the scene of the crime, that he and Helm were alone at the time, and that he was unlawfully in the apartment. The jury evidently believed Mrs. Ballinger's testimony that Helm's companion personally took part in the robbery and disbelieved defendant's claim that he remained outside while the robbery was consummated. Mr. Bastin's testimony further linked defendant to the crimes, when he stated that defendant and Helm brought a radio to the Bastin apartment (the same morning a radio was stolen from Caroline Ballinger), that the two men had approximately fifty dollars each, which they counted on the witnesses' kitchen table, and that both men were highly excited. We find overwhelming evidence to support the conviction of defendant for personally participating in the armed robbery. Even accepting defendant's version of the events, that he had no direct involvement in the actual stabbing of the deceased, defendant's conviction for murder likewise is sustained on the basis of his accountability for the actions of his cofelon, Helm, under Ill. Rev. Stat. 1969, ch. 38, sec. 5—2.[1] In so ruling, we follow the case of *People v. Chavis* (1967), 79 Il.App.2d 10, 223

---

[1] Sec. 5—2 provides in part:

A person is legally accountable for the conduct of another when:

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense.

N.E.2d 196, which sustained the convictions of co-robbers for the attempted murder by one of them during the course of the robbery. Although prosecution under Ill. Rev. Stat. 1969, ch. 38, sec. 9—1(a)(3), the so-called felony murder statute, would have been preferable under the facts of our case, *People v. Chavis* approves of the present prosecution under the accountability statute.

■■ Defendant argues that accountability is not proven by mere presence at the scene of the crime. We agree, but find sufficient involvement by defendant in the planning, commission, and retaining of the proceeds of the crime. Defendant also argues that his guilt on an accountability theory is predicted on the guilt of his cofelon. This is clearly not the law. (See Ill. Rev. Stat. 1969, ch. 38, sec. 5—3.)[2] Therefore, we find that defendant was proven guilty beyond a reasonable doubt of armed robbery and murder.

■■ Defendant next argues that the trial court committed error in failing to instruct the jury that mere presence of the defendant at the scene of a crime is insufficient to establish guilt by way of accountability. The court is under a duty to instruct the jury only as to the elements of the crime with which the defendant is charged. (*People v. Davis* (1966), 74 Ill.App.2d 450, 221 N.E.2d 63). A jury instruction dealing with defendant's theory of the case is not given as a matter of right by the trial court on its own initiative. (*People v. Carvin* (1960), 20 Ill.2d 32, 169 N.E.2d 260; *People v. Baker* (1956), 8 Ill.2d 522, 134 N.E. 2d 786). Since defendant did not tender an instruction on "mere presence," the trial court was under no duty to instruct the jury on its own motion.

■■ Defendant finally contends that his sentence is excessive. The Illinois Supreme Court in *People v. Harvey* (1973), 53 Ill.2d 585, 294 N.E.2d 269 held that the sentencing provisions of the Uniform Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, Secs., 1005—8—1)[3] applies to cases pending on direct appeal. Thus, we are obliged to

---

[2] Sec. 5—3 provides in part:

A person who is legally accountable for the conduct of another which is an element of an offense may be convicted upon proof that the offense was committed and that he was so accountable, although the other person claimed to have committed the offense has not been prosecuted or convicted * * *.

[3] Secs. 1005—8—1 (c) provides in part:

(1) for murder, the minimum term shall be 14 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term;

(2) for a Class I felony, the minimum term shall be 4 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term;

apply the Uniform Code of Corrections to the case at bar. The statute sets out a *suggested* minimum in the case of murder, 14 years, and in the case of armed robbery (a Class I felony), 4 years. The court is granted discretion to set a higher minimum term by considering "the nature and circumstances of the offense and the history and character of the defendant." The trial judge had an opportunity, superior to ours, "in the course of the trial and hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed  *  *  *." (*People v. Taylor* (1965), 33 Ill.2d 417, 424, 211 N.E. 2d 673, 677; *People v. Adams* (1969), 113 Ill.App.2d 205, 220, 252 N.E.2d 35,43.) In view of the very violent nature of the crimes committed, we feel that the trial court in sentencing defendant was acting well within the discretion conferred by the statute, and that this is not an appropriate case for this court to exercise its power to reduce the sentence.

The judgment is affirmed.

Affirmed.

DRUCKER, P. J., and ENGLISH, J., concur.