THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLEMON WEBB *et al.*, Defendants-Appellants.

First District (1st Division)    No. 61693

Opinion filed April 19, 1976.

James R. Streicker and Ira A. Moltz, both of State Appellate Defender's Office, of Chicago, for appellant Clemon Webb.

James J. Doherty, Public Defender, of Chicago (Andrew J. Kleczek and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant Marvin Richmond.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and Mary C. Martin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

The defendants, Marvin Richmond and Clemon Webb, were tried without a jury for armed robbery, adjudged guilty, and each was sentenced to a term of 5 to 7 years.

Isaac Lewis, a 17-year-old college student, claimed he was robbed of $10 and his coat on a lighted rapid transit line platform in Chicago at about 11:30 p.m. on November 4, 1973, as he was on his way to work at the main post office. His testimony was that defendant Webb stuck a gun in his side and announced a stickup while defendant Richmond searched his pockets, and took his money and coat. Lewis returned home immediately and reported the robbery to the police.

The defendants testified that at the time Lewis claimed he was being robbed, they were attacked by Lewis and his friends on the street a few blocks from the rapid transit platform. Richmond ran away. Webb grabbed a bicycle handlebar he saw on the ground, and in swinging it at Lewis tore the back of his coat. Webb then also ran away with, as he testified, Lewis chasing him and shouting, "You are going to pay for my coat."

Lewis' account of how defendant Richmond was apprehended demonstrates self-help of a type which may not always be wise, but which in this instance was effective. Lewis, who had seen defendants in his neighborhood, went looking for them with some friends the afternoon following the robbery. When apprehended by Lewis, the defendants agreed Webb would leave and get the coat. Webb failed to return and the police were called and took Richmond into custody. Richmond testified that while he was being held by Lewis and his friends on November 5, 1973, he told them he did not have Lewis' coat. Webb testified he ran away when Lewis and his friends approached with Lewis again shouting after him that he was going to pay for Lewis' coat.

Lewis picked defendant Webb's picture out of photographs of six

different persons submitted to him by the police, and he identified Webb at a police lineup of five persons as well as at trial.

The issues raised by the defendants on this appeal are: Did they understandingly waive their right to trial by jury; were they denied effective assistance of counsel; did the trial court in view of defendants' insistence upon immediate trial abuse its discretion in failing to grant their appointed counsel's request for a postponement to provide additional time to prepare the defense; did the trial court err in considering motions to suppress simultaneously with the trial, instead of hearing these motions prior to trial; were the defendants found guilty of robbery instead of armed robbery; and, was the sentence of the defendants for armed robbery proper?

Since the pretrial procedures in the circuit court are relevant to the resolution of these issues, it is helpful to summarize them at some length. Richmond was in custody from November 5, 1973, and Webb from December 5, 1973. The public defender was appointed to represent them on February 19, 1974, and informed the court the defendants were announcing ready for and demanding trial. Because the trial judge and the public defender were engaged in another matter, the case was continued on the motion of the State to February 26. On that date the public defender again advised the court that the defendants were demanding trial, but that she was not prepared to go to trial. The trial judge explained the situation to the defendants, and referring to *People v. Carr* (1972), 9 Ill. App. 3d 382, 292 N.E.2d 492, informed them that the court had discretion to grant a continuance notwithstanding their desire for immediate trial so that they could not later claim they were deprived of effective assistance of counsel. Both defendants acknowledged they understood what the judge was telling them, but both indicated they wanted to go to trial without further delay, and that they still desired the public defender to represent them if she would. The following colloquy then occurred:

> "MR. KLEIN [the prosecutor]: Going to be a bench or a jury?
>
> THE COURT: I don't know.
>
> MRS. BURKE [the public defender]: I could not say at this point, Judge.
>
> THE COURT: Can the defendants tell me whether you want a jury or the Court to try it?
>
> DEFENDANT RICHMOND: Bench trial.
>
> THE COURT: You're asking for a bench trial, both of you?
>
> DEFENDANT WEBB: Yes, sir.
>
> MRS. BURKE: Judge, I would indicate to the Court that I have not even conferred with them and surely this should be a matter of discussion between the attorney and the defendant."

The court after further discussion suggested that the case be passed so

that their counsel could consult with the defendants and that perhaps she could convince them or they could convince her. After a recess, the public defender advised the court her clients still answered ready for trial, and the case was continued until March 1, 1974, when trial commenced. On that date, the court inquired whether the defendants still wished to go to trial without any delay, and again they both answered in the affirmative.

Immediately prior to the start of trial the public defender requested and was granted leave to file a motion to suppress oral statements made by defendant Richmond and identification testimony relating to defendant Webb, and asked that her motions be heard before trial commenced. The judge ruled that the motions would be heard during the trial.

Before the trial commenced, the public defender made the following statement:

> "MRS. BURKE: Before the bench, Judge, is Marvin Richmond and Clemon Webb in Indictment Number 74-420. This case was passed earlier today. The Court will recall that the case has been set for trial over the objection of the attorney of record, myself. The gentlemen have demanded trial and are answering ready for trial."

Trial proceeded on March 1, 1974, and the State rested its case on that day. After the State rested, defense counsel's request for a recess until the following Monday, March 4, was granted. Before any evidence was offered on behalf of the defendants, the statements defendant Richmond made to the police were suppressed because proper warnings had not been given, but the motion of defendant Webb to suppress the identification testimony relating to him was denied.

■■ With respect to defendants' argument that they did not understandingly waive a jury as required by section 103—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, §103—6), compliance with the statute depends on the facts of each case. (*People v. Akis* (1975), 27 Ill. App. 3d 74, 326 N.E.2d 532; *People v. Boy* (1974), 22 Ill. App. 3d 740, 318 N.E.2d 39; *People v. Kaprelian* (1972), 6 Ill. App. 3d 1066, 286 N.E.2d 613.) There is no prescribed procedure for a trial court to follow in determining whether a defendant wishes to waive trial by jury.

When the court asked the defendants on February 26 whether they wanted a jury or the court to try the case, defendant Richmond responded, "Bench trial." Defendant Richmond's use of this technical term demonstrated his understanding that a trial by the court is different than a trial by jury. Defendant Webb then indicated he also wanted to be tried without a jury. The defendants were both 24 years old and neither was a stranger to criminal proceedings. Previous experiences with such proceedings, although in the case of defendant Richmond involving misdemeanors rather than felonies, no doubt gave them an understanding

of their right to trial by jury and the difference between a jury trial and a bench trial. (*People v. Gay* (1972), 4 Ill. App. 3d 652, 281 N.E.2d 738.) *Akis* is distinguishable since it involved the first adult offense of the defendant who was only 11 years of age at the time of his previous experience with the law.

After first informing the court that they waived jury trial, defendants had two opportunities to change their minds, both after they consulted with counsel. The first was on February 26 when the case was passed so that their counsel could confer with them. If waiver of trial by jury was prejudicial to the defendants, their counsel would presumably have called that to their attention and discussed it with them during the recess. Yet, when the case was again called that morning, defense counsel did not inform the court of any change in defendants' thoughts about a jury. These circumstances do not differ in substance from the situation where counsel states for the record that his client waives jury trial. (*People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762.) In *People v. Hayes* (1975), 32 Ill. App. 3d 953, 337 N.E.2d 280, the court noted that its belief that the trial court did not err in denying defense counsel a recess to discuss defendants' decision to waive a jury was strengthened because subsequently counsel and the defendant had several hours in which to discuss the matter before the trial actually began.

The defendants were given their second chance to change their minds about a jury trial 3 days later (on March 1) before trial commenced when the trial judge addressed the defendants as follows:

> "Now again I say to both defendants, you have signed a jury waiver in which you have given up your right to a trial by jury, is that your intention? You do not want trial by jury, you want the Court to hear the matter?"

The court's remarks were a clear invitation to the defendants in the presence of their counsel, who by this time had at least 3 days to consult with her clients, to indicate again whether they wished to be tried by a jury or by the court; both defendants, without objection from their counsel, again affirmatively elected to be tried by the court. Even though the trial judge neither elaborated on the differences between a jury trial and a bench trial nor explained the constitutional right to a jury trial as the court did in *Hayes*, the record as a whole demonstrates that a jury was understandingly waived on both February 26 and March 1, and that defense counsel had the opportunity on both days to consult her clients on the subject of jury waiver while the choice was still open to them. (*People v. Robinson*, 63 Ill. 2d 141, 345 N.E.2d 465.) *People v. Davis* (1974), 23 Ill. App. 3d 775, 320 N.E.2d 80, is inapplicable because defendant waived jury trial before the public defender was appointed to represent him, and the record did not disclose any further mention of a jury waiver.

Defendants argue they were denied effective assistance of counsel in

two respects. First, they were permitted to waive a jury although the court was informed by their appointed counsel that she had not discussed the subject of jury waiver with the defendants. Second, notwithstanding defendants' insistence on proceeding to trial, the court deprived the defendants of effective assistance of counsel by failing to grant their counsel's request for additional time she represented was needed for adequate preparation of their case.

As pointed out above, defendants could have had the assistance of their counsel in determining whether they wanted a jury trial, both when the case was passed and later called on February 26, and also on March 1 when the defendants were given another opportunity to change their minds. We find no support in the record for defendants' contention that they were denied effective assistance of counsel in determining whether to waive a jury.

Neither were the defendants denied effective assistance of counsel because the court did not choose to postpone the trial. The defendants insisted on trial without delay. In this situation the court can allow the continuance over the objection of the defendant as in *Carr* or comply with a defendant's demand that there be no delay as in *People v. Spencer* (1974), 18 Ill. App. 3d 1009, 311 N.E.2d 306. Motions for postponement are within the discretion of the trial court (Ill. Rev. Stat. 1973, ch. 38, §114—4(e) and (h); *People v. Hobbs* (1975), 35 Ill. App. 3d 29, 31, 340 N.E.2d 601) and the court did not abuse its discretion in following the *Spencer* procedure rather than the *Carr* procedure. As in *Spencer*, neither the facts nor the State's version of the crime were complex. The State's witnesses were cross-examined by the public defender at length and with competence and vigor. The defendants' testimony regarding their whereabouts on the night of the robbery as well as the next day was clear. The resolution of the case depended upon whether the trial court believed the testimony of Lewis or that of the defendants. Defendant Richmond suggests that his mother and sisters were not called as witnesses because of the time pressures on his counsel. It is difficult, however, to understand how their testimony might have assisted the defendants since they were not depending on an alibi that their relatives could have corroborated. As in *Spencer*, the defendants received excellent representation, and the court did not prejudice their rights in granting them the speedy trial they insisted upon.

■■ The defendants argue that the filing of the motions to suppress on March 1 before trial commenced started the 120-day statutory term designed to provide a speedy trial (Ill. Rev. Stat. 1973, ch. 38, §103—5) running over again and, therefore, at that point the defendants had nothing to gain by opposing delay. Whether the defendants were insisting upon trial with the hope that the State would delay the trial and they would be discharged because of the statutory requirement for trial within

the 120-day limitation period or because they were tired of being locked up or because they wished to get the trial behind them or for other reasons, it was the defendants themselves who persisted in the demand for trial. Nothing has been brought to this court's attention to persuade it that the public defender could have done something to improve the defendants' possibilities of acquittal had the postponement been granted. The defendants thus were not deprived of effective assistance of counsel.

The next contention advanced by the defendants is that the court should have heard the motions to suppress separate from and prior to trial. An almost identical situation was presented in *Spencer* and there is no need to duplicate the careful analysis in that opinion which led the court to the conclusion we reach that although a separate hearing would have been a preferred procedure, defendants were not harmed by the manner in which the trial court disposed of their motions. Defendant Richmond suffered no prejudice because his admissions to a police officer were suppressed. Lewis had the opportunity to observe defendant Webb in good lighting on the platform and again the next afternoon so an independent basis for his identification apart from his photograph clearly existed. (*People v. Spencer* (1974), 18 Ill. App. 3d 1009, 311 N.E.2d 306.) Unlike *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673, the defendants do not point to any evidence relevant to the motions to suppress which was not heard by the trial court.

The defendants argue that they were prejudiced by the procedure followed because the offer of evidence on the issues at trial at the same time as on the two motions to suppress made the trial unnecessarily complex, confusing and uncertain. As explained above, the entire State's case took less than 1 day. The State presented only four witnesses. The first was the police officer who arrested defendant Richmond. His testimony on direct examination was benign. He testified he placed Richmond under arrest but did not interrogate him. Defense counsel cross-examined him as to whether Lewis gave him a description of defendant Webb. Lewis and a friend who accompanied him on November 5 when the defendants were located were both fully cross-examined. The final witness was the investigating police officer who obtained an oral statement from defendant Richmond and assembled the photographs, showed them to Lewis and conducted the lineup. Not only was this officer extensively cross-examined, but defense counsel was successful in having his testimony regarding Richmond excluded. We do not perceive of any theory on which defense counsel could have been successful in excluding Lewis' identification of Webb. Defendants assert that early rulings on the motions to suppress might have been material in determining whether to have the defendants testify, but the trial court ruled on these motions before either defendant took the stand. The manner in which the trial was conducted simultaneously with

consideration of the motions to suppress did not cause confusion or uncertainty in a situation where the relevant facts were neither voluminous nor complicated and the witnesses were few. We are not persuaded that the defendant suffered any prejudice from the procedure the trial court followed.

■■ The transcript of proceedings reflects that the trial judge stated at the conclusion of the trial that the court found the defendants "guilty of the crime of robbery," and thus defendants contend they were not found guilty of armed robbery. The defendants were indicted for armed robbery, and charged with that offense at the arraignment. The sentences imposed were for armed robbery and the notice of appeal filed by each defendant was from a judgment of armed robbery. The testimony showed the use of a gun during the robbery and at the sentencing hearing the trial judge commented upon the use of a gun. The common law record ordinarily imports veracity, but where it is contradicted by facts appearing in the report of proceedings a reviewing court must look at the record as a whole to resolve the inconsistencies. (*People v. Williams* (1963), 27 Ill. 2d 327, 329, 189 N.E.2d 314; *People v. Ford* (1974), 20 Ill. App. 3d 890, 314 N.E.2d 547.) An examination of the full record satisfies this court that the defendants were adjudged to be guilty of armed robbery, and contrary to defendant Richmond's contention, the record as a whole does not indicate a disbelief by the court of Lewis' testimony that defendant Webb stuck a gun in his side.

■■ The sentences imposed were within the limits authorized for the offense of armed robbery. (Ill. Rev. Stat. 1973, ch. 38, §1005—8—1(b)(2).) The fact that defendant Webb held the gun as well as his sentence imposed for another felony between the armed robbery of Lewis and his arrest for that offense justified the trial court in sentencing him to a term longer than the minimum as it was within its discretion to do. In view of Richmond's record of convictions for four misdemeanors including theft and attempt theft, the latest 17 months before the armed robbery of Lewis, the court did not abuse its discretion in the sentence it gave him. The sentences imposed were neither greatly at variance with the purpose and spirit of the law nor manifestly in excess of the prescriptions of article I, section 11 of the 1970 Illinois Constitution. *People v. Morgan* (1974), 59 Ill. 2d 276, 282, 319 N.E.2d 764; *People v. Sprinkle* (1974), 56 Ill. 2d 257, 264, 307 N.E.2d 161; *People v. Soto* (1975), 35 Ill. App. 3d 166, 171, 341 N.E.2d 107; *People v. Rudolph* (1973), 12 Ill. App. 3d 420, 299 N.E.2d 129.

Judgments affirmed.

BURKE and O'CONNOR, JJ., concur.