2022 IL App (1st) 190499

No. 1-19-0499

Opinion filed March 29, 2022

SECOND DIVISION

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 18-CR-5497 |
| | ) | |
| KEITH GRIFFIN, | ) | The Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Lavin and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant Keith Griffin was found guilty of the offenses of being an armed habitual criminal and unlawful use of a weapon by a felon. After merging the weapons convictions into the armed habitual criminal count, the trial court sentenced defendant to eight years imprisonment. On appeal, defendant argues (1) that the trial court erroneously honored defendant's demand for a speedy trial over the objection of defendant's counsel and (2) that he was denied a fair trial because of certain hearsay statements that were elicited without objection or improperly admitted into evidence. We affirm the judgment of the trial court.

¶ 2                                              I. BACKGROUND

¶ 3         Defendant was arraigned on May 1, 2018, at which time an assistant public defender was appointed to represent him. At a status hearing on August 9, 2018, defendant's counsel informed the trial court that defendant was wishing to demand trial, that this wish was contrary to counsel's advice, and that counsel had informed defendant of the evidence not yet in his possession. The trial court then inquired of defendant personally, ensuring that he understood the charges against him and the potential sentence he would face if convicted. The trial court emphasized the extent to which defendant's liberty was at stake and reiterated to defendant that his counsel felt "like he's operating in the blind if he doesn't have this information." Defendant's counsel then stated, "It's up to you. I told you." The trial court suggested that defendant talk further with his attorney about the matter and stated, "If you start demanding trial I'll respect that but that means that he's going to come to trial and he's not even going to know what the government has against you." The case was then continued to August 27, 2018, for the completion of discovery. On that date, the prosecutor represented that all discovery had been tendered by the state, and the case was again continued for the filing of defendant's answer after counsel and defendant had reviewed the video evidence that had been tendered.

¶ 4         At the next status hearing, on September 20, 2018, defendant's counsel again stated to the trial court that defendant wanted to demand trial against counsel's advice. Defendant's counsel stated that he was still investigating a potential occurrence witness but had not yet been able to reach that person. The trial court again addressed defendant, reminded him of the potential sentence he faced if convicted, and stated to defendant that his counsel wanted more time to ensure that he could talk to witnesses and be fully prepared to go to trial. After the trial court did this, defendant stated, "I'd like to demand trial today." The trial court then asked, "Against his advice?"

The defendant responded, "Yes." The trial court then ordered the state to "pick a date over counsel's objection." The prosecutor suggested a trial date of October 3, 2018. Defense counsel stated that he was scheduled for jury trial of a homicide case that week but that he did not know if that trial would proceed. During further discussion, the trial court stated that the defendant had "been through the system before," having multiple felony convictions, and "knows what goes on in court. *** If he wants to demand trial, I'll respect that. He's in custody. He's the one that can get 30 years not his lawyer or anybody else."

¶ 5       The case proceeded to bench trial on October 3, 2018. The state presented three witnesses, the first of which was Theresa Jones (Jones). Jones testified that as of March 29, 2018, she was living in an apartment on South Racine Avenue in Chicago with her daughter Kanesha Jones (Kanesha), defendant (who was Kanesha's boyfriend), and Andre Turner. Shortly before 10 a.m. that day, Kanesha came home, and Jones noticed that Kanesha had a black eye, a footprint on her face, and bruising around her neck. About 15 minutes later, defendant came through the apartment's back door. Jones testified that defendant was acting like he had not done anything, but she said to him, "Why do you keep beating on my daughter?" Jones then picked up a stick and hit defendant three times. After that, defendant went into the bedroom he shared with Kanesha and retrieved a shotgun. Defendant came back into the room where Jones was standing, and defendant pointed the shotgun at Jones. Kanesha was standing in front of Jones, saying, "That's my mother. That's my mother." Defendant was swinging the shotgun, and he pointed it at Jones three times.

¶ 6       Jones testified that the situation calmed down, but police officers soon arrived at her door. Defendant went to the door, opened it, and shut it immediately. Defendant then ran to the back door of the apartment and out of the building. Jones opened the door and let the police officers inside. Jones was asked what she told the police about where defendant was, and, without

objection, she testified that she said he ran out the back. She testified that at some point the police asked her to look out her front window and identify the person who was standing outside. She testified that she did so and identified that person as defendant. Jones was asked what she told the police that defendant had done, and without objection, she answered, "He pointed the gun at me." She was asked whether she told the police where the gun was, and without objection, she answered, "Yes, I did." She testified that the gun that defendant had was in the bedroom shared by defendant and Kanesha. She testified that she saw the police recover that gun.

¶ 7        On cross-examination, Jones testified that she had a son who was paroled to the residence where she lived. She testified that the gun did not belong to her son. She testified that she was upset with defendant because he had repeatedly beaten her daughter. She testified that she and defendant had gotten into an argument about what he had done to Kanesha and that they were "in each other's faces." She testified that when defendant ran out the back door after shutting the front door on the police, he had run straight to the back and outside without first going to Kanesha's room. He did not have a gun in his hand when he ran out. She testified that she had not called the police, and she knew the gun was in the house when they arrived. She testified that she did not have a license to carry a gun, a firearm owners identification card, or a concealed carry license. She testified that the police did not ask if defendant was living with them in the apartment.

¶ 8        Officer Daniel McNicholas of the Chicago Police Department testified that he was working with a partner on the day at issue and was dispatched to the apartment on South Racine Avenue. The trial court overruled an objection by defendant's counsel to a question about what information Officer McNicholas had received in the dispatch about the reason why he was going to that apartment, and he answered that there had been a call of a person with a gun. He testified that when he and his partner arrived at the apartment, they knocked on the door. A person whom he

identified in court as defendant opened the door and then quickly closed it. Officer McNicholas then kicked at the door, at which point Theresa Jones let them into the apartment. Officer McNicholas was asked what Jones had told them about where defendant was, and without objection, he testified that Jones said defendant was fleeing out of the back of the residence. Officer McNicholas then went toward the back of the apartment but did not see defendant anywhere inside it. He then went to talk further to Jones and Kanesha. The prosecutor then asked, "without going into the substance of what happened, while you were talking with them, did Theresa tell you that there was a gun in the apartment?" Defendant's counsel objected. The trial court overruled the objection, stating, "She was here. She was subject to cross-examination. She testified about this very thing." Officer McNicholas then answered in the affirmative. He went on to testify that Jones pointed him to where the firearm was located, and after she did so, he went into a bedroom where he found a loaded shotgun in plain view.

¶ 9        Officer McNicholas testified that he was wearing a body camera that recorded video of the interaction. Part of that video was published to the court and later admitted into evidence, with the court sustaining the objection that statements in it were hearsay and stating they would not be considered for the truth of the matters asserted. Officer McNicholas testified that the shotgun that he had been directed to by Jones could be seen in the video. The court overruled an objection to a question of whether the gun seen in the video was the gun that Jones told him the defendant pointed at her, with the court explaining that Jones "testified to exactly that." Officer McNicholas answered the question in the affirmative.

¶ 10        On cross-examination, Officer McNicholas testified that he had learned that the 911 call had come from a third party in the building. He testified that he had the opportunity to look around and examine the premises, but he did not recall whether he discovered any mail addressed to defendant

or any of defendant's clothing inside that apartment. When defendant was placed under arrest, Officer McNicholas learned that defendant's address where he lived was on South Peoria Street. He testified that the time when he asked Jones where the gun was occurred when he returned to speak with her after going to the back of the apartment.

¶ 11    Officer Adrian McCoy of the Chicago Police Department testified that he was working with a partner on the day at issue, and they received a call to assist with a domestic-related incident. They stopped in front of the apartment building and heard a call from the tactical officers inside stating that a subject was running out the back door. He proceeded to the rear of the building where he observed a person whom he identified in court as defendant running down the stairs and north through an alley. Officer McCoy testified that he chased defendant, detained him, and handed him off to other officers. Video of Officer McCoy's body worn camera was published to the court with no further questions asked concerning it. It was later admitted into evidence. The state introduced into evidence certified copies of two prior convictions of defendant as predicates for that element of the armed habitual criminal count.

¶ 12    Only defendant's counsel made a closing argument. In it, counsel argued that the state had not proven beyond a reasonable doubt that defendant possessed a firearm. He pointed out that there was no evidence such as mail or clothing indicating that defendant lived in the apartment where the gun was found, and he was discovered to have a different residence address when he was arrested. Counsel argued that Jones was not a credible witness and that she was biased. He cited the fact that the police had shown up to her apartment unexpectedly after being called by a neighbor. She and her daughter were the only ones there, and she had to explain the presence of a gun that she was not licensed to possess. She did so, counsel argued, by making the self-serving assertion that it was defendant's gun. Counsel argued that Jones was biased by the domestic

incident that had occurred with her daughter earlier that morning, and she was angry with defendant and wanted him out of the apartment. Counsel argued that it was implausible that defendant would leave a gun inside the apartment if he was truly running away from the scene. Finally, counsel argued that there had been no physical evidence tying defendant to the gun.

¶ 13 The trial court ruled that the state had met its burden of proof beyond a reasonable doubt and found defendant guilty of all charges. The trial court stated that it found the state's witnesses to be credible and compelling. It found that Jones was concerned about defendant because of the numerous occasions on which he had been violent with her daughter and they got into an argument about it that was significant enough to cause a third party to call the police. During that argument, Jones started hitting him, whereupon defendant responded by going into the bedroom he shared with Kanesha, retrieving the shotgun, and pointing it at Jones in a threatening way. The court noted that after defendant initially opened the door, he closed it on the police officers, ran away from them, and had to be stopped on the street after a chase. Meanwhile, Jones let the police officers inside and directed them to the gun, which was exactly where she said it would be. The trial court stated that under those circumstances, it did not find that she was making up a story to pin a gun on defendant that actually belonged to her. The trial court further noted that, despite the suggestion that defendant did not live at the apartment, he at least knew the gun was there. The manner by which he picked the gun up and used it as a weapon by pointing it at somebody else was sufficient to show that he was in possession of it.

¶ 14 The trial court merged all charges into the count for armed habitual criminal. Defendant filed a posttrial motion to reconsider or for a new trial; an amended version of which was denied. The trial court then sentenced defendant to eight years in the Illinois Department of Corrections. This appeal then followed.

¶ 15                                    II. ANALYSIS

¶ 16                                    A. Speedy Trial

¶ 17        Defendant's first argument on appeal is that the trial court erred by honoring defendant's demand for a speedy trial despite the statements of defendant's counsel (made 13 days before the trial date) that he was not ready for trial, that he still needed to interview witnesses, and that he had a conflicting matter scheduled on the date set for defendant's trial. Defendant contends that the decision of whether to demand a speedy trial belongs uniquely to a criminal defendant's attorney and that the trial court erred by allowing defendant himself to control that decision. He argues that this error forced his attorney to try his case unprepared and denied him a fair trial.

¶ 18        Both the United States Constitution and the Illinois Constitution afford criminal defendants the right to a speedy trial. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. Also, section 103-5 of the Code of Criminal Procedure of 1963 provides, with certain exceptions, that every person in custody in Illinois for an alleged offense shall be tried within 120 days of the date he or she was taken into custody. 725 ILCS 5/103-5 (West 2018).

¶ 19        Defendant's argument proceeds from the notion that in a criminal matter, only a handful of decisions belong to a defendant personally (after consulting with counsel), while most decisions are matters of trial tactics and strategy that belong to counsel (after consulting with the defendant). The supreme court has recognized that a defendant has the ultimate decision-making authority on (1) what plea to enter, (2) whether to waive a jury trial, (3) whether to testify on his or her own behalf, (4) whether to submit a jury instruction on a lesser-included defense, and (5) whether to appeal. *People v. Wilmington*, 2013 IL 112938, ¶¶ 45-46. By contrast, ultimate decision-making authority on matters of trial tactics and strategy belong to defense counsel, and these include decisions such as which witnesses to call, whether and how to conduct cross-examination, which

jurors to accept or strike, the trial motions to be made, and what defenses should be presented at trial. *People v. Ramey*, 152 Ill. 2d 41, 54 (1992). The decision of whether to demand a speedy trial has also been recognized as a matter "left to the sound strategic decision of counsel." *People v. Kaczmarek*, 207 Ill. 2d 288, 298 (2003). Thus, according to defendant, the trial court erred by honoring defendant's demand for a speedy trial instead of deferring to his attorney's statement that he wanted more time to prepare for trial.

¶ 20   As defendant acknowledges, the supreme court has addressed cases in which criminal defendants have invoked the right to a speedy trial against the advice of attorneys seeking more time to prepare for trial. In *People v. Lewis*, 60 Ill. 2d 152 (1975), the defendant was found guilty of armed robbery in a bench trial scheduled to commence 116 days after his arrest. A public defender had been appointed for him six days prior to his scheduled trial date, and when the case was called that day, the public defender advised the court that he was not ready for trial due to his appointment only six days earlier. *Id.* at 154-55. The public defender informed the trial court that, despite his advice to the defendant that he was unprepared for trial, the defendant was persisting in answering ready for trial. *Id.* at 155. The trial court thereafter made specific inquiry of the defendant on two occasions if he still persisted in answering ready for trial despite his counsel's advice, and the defendant unequivocally indicated that he was ready and wanted the trial to proceed that day. *Id.* The trial court instructed the prosecution to tender its discovery materials to the defense and granted the public defender time to consult with two of the state's witnesses. *Id.* Also, a second assistant public defender who had previously represented the same defendant at a preliminary hearing assisted with the trial. *Id.* The trial itself commenced the following day, and the defendant was found guilty of three of the four counts against him. *Id.* at 155-56.

¶ 21   The defendant's argument to the supreme court was that he had been denied due process of

law by being forced to choose between his statutory right to trial within 120 days of arrest and his constitutional right to effective assistance of counsel. *Id.* at 156. Rejecting that argument, the supreme court reasoned:

> " ' "To argue that he was forced to choose as he did is to argue technicalities. The right to a speedy trial and the right to avoid a precipitous trial are separate but related rights. Both are designed to assure an accused a fair trial, to prevent undue delay in one instance and undue haste in the other. He can demand action or avoid action as the exigencies of his situation may dictate. But fairness and justice are not a one-way street. *** The fact that on occasion the accused might have to jeopardize the legislative benefits of the four-month rule by asserting his right to a continuance does not entail a denial of his right to a speedy trial. *** The election was defendant's to determine on the basis of what would better insure him a fair trial, and, having chosen to proceed, his present argument is nothing more than technical obfuscation." ' " *Id.* at 156-57 (quoting *People v. Williams*, 59 Ill. 2d 402, 406 (1974), quoting *People v. Johnson*, 45 Ill. 2d 38, 43-44 (1970)).

The supreme court went on to conclude that the defendant had not been denied the effective assistance of counsel as a consequence of his election to proceed to trial on the scheduled date. *Id.* at 157. The court noted that the trial was relatively short, it did not involve complex issues of law or fact that necessitated lengthy preparation by defense counsel, a second assistant public defender who had previously represented the defendant at a preliminary hearing was able to assist at trial, the defense had been furnished with all materials that normally would have been turned over in discovery, and counsel was allowed to speak with two of the state's witnesses prior to trial. *Id.* The court rejected as conjecture the defendant's suggestion that permitting more time for investigation by defense counsel would have produced additional evidence favorable to him. *Id.* at 157-58.

¶ 22    *Williams* was similarly a case in which a defendant demanded trial commence on the 119th day of his confinement, despite a public defender only being appointed for him that day who advised the trial judge that he wanted some time to investigate the case and locate a particular witness. *Williams*, 59 Ill. 2d at 404. Employing the reasoning set forth in the preceding paragraph, the court rejected the defendant's argument that he was denied due process by being required to choose between the right to effective assistance of counsel and a speedy trial. *Id.* at 406.

¶ 23    In *People v. Webb*, 38 Ill. App. 3d 629, 631 (1976), this court addressed a case in which two defendants charged with armed robbery insisted on demanding an immediate trial one week after the appointment of a public defender who advised the trial court that she was not prepared to go to trial. A bench trial commenced three days later at which the defendants were found guilty. *Id.* at 632. On appeal, the defendants argued that the trial court had deprived them of effective assistance of counsel by failing to grant their attorney's request for the additional time that she represented was needed for adequate preparation of their case. *Id.* at 634. This court rejected the defendants' argument. *Id.* This court held that in the situation presented, the trial court may (1) allow a continuance over the objection of the defendant, as had occurred in *People v. Carr*, 9 Ill. App. 3d 382 (1972), or (2) comply with a defendant's demand that there be no delay, as had occurred in *People v. Spencer*, 18 Ill. App. 3d 1009 (1974) (abstract of opinion). *Webb*, 38 Ill. App. 3d at 634. This court then reasoned that the trial court did abuse its discretion in complying with the defendant's demand for trial instead of allowing a continuance. *Id.* The court further noted that the facts of the case before it were not complex and the defendants' attorney had been able to cross-examine the state's witnesses at length and with competence and vigor despite the short time in which she had to prepare for trial. *Id.*

¶ 24    Based on these cases, we reject defendant's argument that it is error as a matter of law for a

trial court to honor a defendant's demand for speedy trial over his or her attorney's objection or representation to the court that additional time is needed to prepare. Although defendant argues that *Lewis* and *Williams* do not "sit well with modern precedent" and "proceed from a flawed premise" that the defendant personally controls the decision to demand a speedy trial, defendant has failed to persuade us that these cases are no longer good law. Instead, we believe that the cases above reflect the proper approach that a trial court may honor a criminal defendant's demand to proceed to trial against the advice of counsel or where counsel represents that additional time to prepare would be beneficial, provided that the trial court ensures that the defendant understands the consequences that such a decision could have on his or her counsel's preparedness for trial.

¶ 25　　In this case, the approach followed by the trial court was appropriate. The trial court addressed the defendant and ensured that he understood the charges against him, the potential sentence he faced if convicted, the fact that his attorney believed a continuance would be advantageous to the defendant's case, the fact that demanding trial could mean that his attorney would not be as prepared to represent him as he might otherwise be, and the fact that he was persisting in this demand against his attorney's advice. The trial court also inquired of defendant's counsel about the nature of the investigation he wanted to complete before proceeding to trial. The trial court further recognized the defendant's previous experience with the criminal justice system provided him with insight into the consequences of the decision to demand trial against his attorney's advice. Having taken all of these factors into consideration, we find no error in the trial court's honoring of defendant's demand for trial in the circumstances of this case.

¶ 26　　The cases relied upon by defendant are inapposite to the question of whether defense counsel, and not a defendant personally, is vested with ultimate decision-making authority about whether to demand a speedy trial. In *Wilmington*, 2013 IL 112938, ¶¶ 44-51, the issue before the court was

whether the decision to give a second degree murder instruction to the jury required a procedure that ensured that the defendant agreed to the tendering of such an instruction. The case had nothing to do with a demand for speedy trial, and we find nothing in the supreme court's analysis that suggests that a trial court lacks the discretion to honor a defendant's knowing demand for speedy trial if made against the advice of an attorney.

¶ 27     In *People v. Keys*, 195 Ill. App. 3d 370, 372 (1990), the defendant argued that his attorney's failure to follow his directions to demand a speedy trial amounted to ineffective assistance of counsel. The court rejected this argument, reasoning that a defense attorney could have strategic and tactical bases for not demanding a speedy trial, and thus it was a decision left to the attorney. *Id.* at 373-75. However, saying that counsel is not ineffective for making the strategic decision not to demand a speedy trial is not the same as saying that a trial court may not honor the knowing decision of a defendant who understands the consequences and demands trial against the advice of his or her attorney.

¶ 28     In *Carr*, 9 Ill. App. 3d at 383-84, the court held that the trial court properly granted defense counsel's request for a continuance for additional time to prepare for trial despite the defendant's objection to the continuance. As discussed above, this court in *Webb* recognized that the approach taken in *Carr* was one of two approaches a trial court may take in this circumstance, and a trial court does not abuse its discretion by following the opposite approach. *Webb*, 38 Ill. App. 3d at 634. In *People v. Bowman*, 138 Ill. 2d 131, 140-41 (1990), the issue was whether the defendant had established a violation of his speedy-trial rights where the trial court had granted a continuance requested by defendant's substituting counsel despite defendant's later assertions that he had never agreed to a continuance. We find no support in *Bowman* for the proposition that a trial court must always defer to a defense attorney's request for continuance over a defendant's demand for trial.

¶ 29      In *Kaczmarek*, 207 Ill. 2d at 293-300, the issue was whether a defendant's right to a speedy trial had been violated by the fact that his case had been continued for nearly 3½ years between the issuance of the appellate court's mandate remanding his case for a new trial and the retrial itself. During that time, the defendant had been represented by six different attorneys, and the case had been continued 39 times by agreement of both parties, 3 times by order of court, and 3 times on motions by the defendant's attorneys. *Id.* at 295-96. As part of its analysis of the factors bearing on whether a constitutional violation had occurred, as set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the court looked to whether the defendant had asserted his right to a speedy trial. *Kaczmarek*, 207 Ill. 2d at 297. The court noted that the defendant had attempted to assert his right to a speedy trial against the wishes of his attorneys, who were not prepared to proceed to trial. *Id.* at 297-98. On each of these occasions, however, the record showed that the defendant had either acquiesced to continuances requested by his attorneys or had failed to obtain a ruling from the trial court on *pro se* motions demanding immediate trial. *Id.* at 298-99. Instead, the record indicated that the defendant wanted the assistance of counsel in preparing his defense for trial and therefore was bound by his attorneys' actions in requesting or agreeing to continuances. *Id.* at 299.

¶ 30      We find the discussion in *Kaczmarek* to be inapposite to the argument pressed by defendant here. The legal issue before the court in that case was not the propriety of honoring a defendant's demand for speedy trial made against an attorney's advice. Instead, it is evident that the defendant in *Kaczmarek* did not make an unequivocal demand that his case proceed immediately to retrial. Rather, the defendant either agreed to continuances or failed to press the trial court to rule on his *pro se* motions for immediate trial. Nothing in *Kaczmarek* suggests that a trial court must always grant an attorney's request for a continuance in the face of a defendant demanding immediate trial or that a trial court lacks the discretion to honor a defendant's knowing demand for immediate trial

if made against an attorney's advice.

¶ 31        Finally, we conclude by noting that in this case, defendant was not deprived of a fair trial by the trial court's honoring of his request for a speedy trial. As in cases such as *Lewis* and *Webb*, the present case was neither factually nor legally complex. The entire trial transcript comprises only 43 pages. It demonstrates that defendant's counsel was able to competently and vigorously cross-examine the state's three witnesses and elicit testimony on various points favorable to the defense. Counsel ably presented a defense theory attacking the state's ability to prove beyond a reasonable doubt that defendant possessed the gun found at the apartment where Jones resided. His cross-examination of Jones shows an attempt to demonstrate bias and undermine her credibility by raising questions about whether she was seeking to blame defendant out of anger for the incident of domestic violence that had occurred involving her daughter or because she needed to explain the presence of a gun in her apartment when the police arrived unexpectedly. Counsel also elicited testimony casting doubt on whether defendant resided at the apartment where the gun was found and established that no physical evidence tied defendant to the gun. Ultimately, defendant was well represented by his counsel at trial. Any suggestion by defendant that additional evidence favorable to him would have become available if his attorney had more time to prepare for trial is nothing other than speculation and conjecture.

¶ 32                                B. Admission of Hearsay

¶ 33        Defendant's second argument on appeal is that he was denied a fair trial due to the eliciting of inadmissible hearsay statements made by Jones to Officer McNicholas. Among these are several statements to which his counsel did not object, and defendant contends that his defense counsel was ineffective for failing to object to testimony that Jones had told Officer McNicholas that defendant had pointed a gun at her and where that gun was located. Defendant similarly contends,

as to instances in which his counsel did object, that the trial court erred in overruling objections to testimony by Officer McNicholas that Jones told him there was a gun in the apartment and that a gun shown in video footage was the gun Jones said defendant pointed at her.

¶ 34    The failure of defense counsel to object to improper and prejudicial hearsay testimony, thereby allowing its admission, may amount to ineffective assistance of counsel. See *People v. McMillin*, 352 Ill. App. 3d 336, 344 (2004). To establish a claim of ineffective assistance, a defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defendant in that, absent such deficient performance, there is a reasonable probability that the trial's result would have been different. *People v. Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Both prongs of this test must be satisfied. *Id.*

¶ 35    Defendant first contends that his trial counsel was ineffective for failing to object when the prosecutor elicited testimony from Jones that she told the police that defendant pointed a gun at her. This testimony occurred at the conclusion of a line of questioning in which she testified that the police had asked her to look out her front window to identify an individual, and she identified defendant. The prosecutor then asked Jones what she told the police he did, and without objection, she answered, "He pointed the gun at me." Defendant contends this testimony by Jones was inadmissible hearsay, specifically that it was a prior consistent statement that bolstered testimony Jones had given at trial. By contrast, the state argues that this was an admissible statement of identification to which defendant's counsel properly refrained from objecting.

¶ 36    The general rule is that a witness may not testify to an out-of-court statement made by that witness or a third person that corroborates or is consistent with testimony given at trial. *People v. Beals*, 162 Ill. 2d 497, 507 (1994). "The danger in prior consistent statements it that a jury is likely

to attach disproportionate significance to them. People tend to believe that which is repeated most often, regardless of its intrinsic merit, and repetition lends credibility to testimony that it might not otherwise deserve." *People v. Smith*, 139 Ill. App. 3d 21, 33 (1985). This rule, however, does not apply to statements of identification. *Beals*, 162 Ill. 2d at 507-08; *People v. Anderson*, 2018 IL App (1st) 150931, ¶ 37. Accordingly, section 115-12 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-12 (West 2018)) provides that "[a] statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." See Ill. R. Evid. 801(d)(1)(B) (eff. Oct. 15, 2015). Such statements of identification are admissible as substantive evidence. *Anderson*, 2018 IL App (1st) 150931, ¶ 37 (citing *People v. Williams*, 193 Ill. 2d 306, 359-60 (2000)).

¶ 37    Our supreme court defines "statements of identification" broadly to encompass "the entire identification process." *People v. Tisdel*, 201 Ill. 2d 210, 219 (2002). In *Anderson*, 2018 IL App (1st) 150931, ¶ 39, this court considered the extent to which this exception also "encompasses the declarant's statements regarding what he observed the identified person doing." This court held that, "when admitting a prior identification as substantive evidence under section 115-12, the testimony may include a description of the offense 'only to the extent necessary to make the identification understandable to the jury,' but it may not go beyond that to provide 'detailed accounts of the actual crime.' " *Id.* ¶ 42 (quoting *Brown v. United States*, 840 A.2d 82, 89 (D.C. 2004)). Accordingly, the court held that the trial court had properly admitted testimony by a witness that he had identified the defendant to the police as the person carrying a gun and a codefendant as the person who had taken the gun from the defendant and fired it. *Id.* ¶¶ 43, 47.

¶ 38    In this case, Jones's testimony that she told police that defendant pointed a gun at her is

admissible as a statement of identification. The context in which this testimony was elicited was a line of questioning establishing that she had identified defendant after the police had asked her to look out her window and identify the person standing outside. As in *Anderson*, it was permissible as part of the identification process to elicit brief testimony connecting the identification of defendant to what she had witnessed defendant do, to make the identification understandable to the trier of fact. The testimony was in no way detailed or in excess of what was necessary to make the identification understandable. As this testimony was proper as a statement of identification of a person by a witness who testified at trial and was subject to cross-examination, defendant's counsel was not ineffective for withholding an objection.

¶ 39    Defendant's second contention is that his counsel provided ineffective assistance by failing to object when Jones was asked, "When the police were in your apartment, did you tell them where the gun was?" Jones answered, "Yes, I did." Jones then went on to testify, without reference to any prior statements to police, that the gun was in the bedroom that defendant and Kanesha shared and that she saw the police recover it. Defendant contends that Jones's testimony that she told the police where the gun was amounted to an inadmissible prior consistent statement.

¶ 40    Our review of Jones's testimony shows that, at the point in her testimony when this question was asked, Jones had not given any testimony about whether she knew the gun's location or where it was, *i.e.*, whether it was still inside the apartment or whether defendant had taken it when he ran out the back door. As there had been no trial testimony on this point, an objection that a prior statement consistent with trial testimony was being elicited would have been properly overruled. Further, a more basic hearsay objection would also have been properly overruled. To qualify as hearsay, a statement must be offered to establish the truth of the matter asserted in the statement. *People v. Gonzalez*, 379 Ill. App. 3d 941, 954 (2008). Testimony involving an out-of-court

statement that is used for a purpose other than to prove the truth of the matter asserted in the statement is not hearsay. *People v. Littleton*, 2014 IL App (1st) 121950, ¶ 52. Here, Jones's statement that she told the police where the gun was located was not offered for the truth that the gun was in any particular place. Rather, it was predicate testimony that explained the subsequent conduct of the police officers in her testimony that immediately followed, which was that she saw the police recover the gun from the bedroom shared by Kanesha and defendant. Statements offered for their effect on the listener or to explain the subsequent course of conduct of another person are not hearsay. *People v. Sangster*, 2014 IL App (1st) 113457, ¶ 76. As this was not hearsay, defendant's counsel was not ineffective for withholding objection to this testimony.

¶ 41    Relatedly, defendant next argues that his trial counsel was ineffective for failing to raise a hearsay objection when Officer McNicholas was asked whether Jones had pointed him to where the firearm was located and whether the shotgun seen on his body-camera video was the shotgun she had directed him to. In this same line of questioning, he contends that the trial court erred by overruling the objections that his counsel did raise. The exchange at issue proceeded as follows:

"Q. While you were in the apartment talking to them about what happened[,] without going into the substance of what happened, while you were talking with them, did Theresa tell you that there was a gun in the apartment?

MR. CARLSEN [(DEFENDANT'S ATTORNEY)]: Objection.

THE COURT: Overruled. She was here. She was subject to cross-examination. She testified about this very thing. Overruled.

You may answer.

THE WITNESS: Yes.

[MR. RUSCH (ASSISTANT STATE'S ATTORNEY)]: Did she point you to where

that firearm was located?

A. Yes.

Q. And where did you go within that apartment after she told you where the gun was?

A. A bedroom.

Q. And when you went into the bedroom, did you see a firearm?

A. Yes."

Later, during questioning of Officer McNicholas concerning what was being shown in his body-camera video that was published to the court, the following exchange occurred:

"Q. And is that the shotgun that you saw on the ground in the bedroom that you were directed to?

A. Yes.

Q. The gun that Ms. Theresa Jones told you the defendant pointed at her?

A. Yes.

MR. CARLSEN: Objection.

THE COURT: Overruled. She testified to exactly that."

¶ 42    As defendant acknowledges, a police officer may testify about statements made by others, such as victims or witnesses, when such testimony is not offered to prove the truth of the matter asserted, but instead is used to show the investigative steps taken by the officer leading to the defendant's arrest. *People v. Pulliam*, 176 Ill. 2d 261, 274 (1997). Such testimony is not hearsay because it is based upon the officer's own personal knowledge, and it is admissible although the inference logically to be drawn from it is that the information received motivated the officer's subsequent conduct. *People v. Gacho*, 122 Ill. 2d 221, 248 (1988). However, the testimony cannot reveal the substance of the statements made by a nontestifying witness to the officer in the course

of the investigation. *People v. Risper*, 2015 IL App (1st) 130993, ¶ 41. This court has applied this rule and held that it was not hearsay for a police officer to testify that a witness had pointed out the place that the officer searched and found a weapon. *In re E.H.*, 299 Ill. App. 3d 42, 51 (1998).

¶ 43 Similarly, here, the testimony by Officer McNicholas in the exchanges set forth above was a permissible recounting of the steps of his investigation leading to his discovery of the gun in the bedroom and the ultimate arrest of the defendant. His testimony did not impermissibly reveal the substance of any statement by Jones. Instead, the substantive evidence that a gun was present in the apartment and that defendant had pointed it at her three times was established by the eyewitness testimony of Jones herself, who testified at trial and was subject to cross examination. This was not a situation in which the state was impermissibly attempting to use the testimony of Officer McNicholas for the purpose of introducing substantive information into evidence through an out-of-court statement. See *People v. Hammonds*, 409 Ill. App. 3d 838, 856 (2011). Accordingly, defendant's counsel was not ineffective for not objecting to this testimony, and the trial court did not abuse its discretion in overruling the objections raised.

¶ 44                                      III. CONCLUSION

¶ 45 For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 46 Affirmed.

---

**No. 1-19-0499**

---

| | |
|---|---|
| **Cite as:** | *People v. Griffin*, 2022 IL App (1st) 190499 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CR-5497; the Hon. James B. Linn, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Abigail Hogan Elmer, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Daniel Piwowarczyk, and Amari Dawson, Assistant State's Attorneys, of counsel), for the People. |

---